## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

---

| | | |
|---|---|---|
| ADVANCED CARD SYSTEMS, INC. | ) | |
| d/b/a  SANDIA IMAGING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 04 cv 12295 NG |
| | ) | |
| HEWLETT-PACKARD COMPANY | ) | |
| and INDIGO AMERICA, INC., | ) | |
| | ) | |
| Defendant | ) | |

---

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

Plaintiff Advanced Card Systems, Inc. d/b/a Sandia Imaging ("Sandia") has sued defendants Hewlett-Packard Company ("HP") and an HP subsidiary, Indigo America, Inc. ("Indigo") (collectively, the "defendants"), in connection with a digital printing press Sandia purchased from Indigo in December, 2002.  In the Complaint Sandia purports to assert claims for negligence (Count A), breach of contract (Count B) and fraud (Count D).  Sandia also seeks to have a settlement agreement between the parties declared void (Count C).

The defendants move to dismiss the Complaint under Rule 12(b)(6) for the following reasons.  First, the claims for negligence, breach of contract and fraud (Counts A, B and D) were explicitly settled and released by Sandia in the settlement agreement into which Sandia entered with the defendants in November, 2003.  These claims also should be dismissed against HP for the separate reason that HP was not involved in the disputed transactions.  Second, the claims for negligence and breach of contract (Counts A and B) should be dismissed because of the warranty and limitation of liability provisions in the Purchase and Sale Agreement and the two

maintenance agreements between Indigo and Sandia.  Third, the claim to void the settlement agreement (Count C) is barred by Sandia's unclean hands, in that the only reason Sandia seeks have the settlement agreement declared invalid is because Sandia breached the agreement's confidentiality provisions.  And fourth, the claim for fraud (Count D) should be dismissed because Sandia has failed to plead the alleged fraud with the required specificity.

### FACTS[1]

Sandia is a printing and distribution company that specializes in printing plastic cards, such as credit cards.  Complaint, ¶ 7.  Indigo is a wholly owned subsidiary of HP.  Ex. 1 at 1. Indigo sells and services digital printing equipment, including equipment which can be used to print plastic cards.  Complaint, ¶ 9; Ex. 1.

On December 5, 2002, Sandia entered into a Purchase and Sale Agreement with Indigo for the purchase of an hp indigo s2000 press (the "s2000 press" or the "Equipment").[2] Complaint, ¶¶ 10, 14; Ex. 1.  The s2000 press is a six-color digital printer capable of producing plastic cards.  Complaint, ¶¶ 9, 10; Ex. 1.  The Purchase and Sale Agreement was signed by Indigo's General Manager and by Sandia's President and Chief Operating Officer, Bertrand Pelletier.  Ex. 1 at 1.  In signing the Purchase and Sale Agreement, Mr. Pelletier agreed on behalf of Sandia that its provisions "represent the entire agreement between the parties with respect to the purchase and/or licensing of the Equipment, and cancel all prior understanding, written or oral."  *Id.*, § 18.

---

[1] For purposes of this motion only, the defendants accept as true, as they must, the factual allegations in the Complaint.  *See, e.g., Chongris v. Bd. of Appeals*, 811 F.2d 36, 37 (1st Cir. 1987), *cert. denied*, 483 U.S. 1021 (1987).

[2] The Purchase and Sale Agreement identified the seller of the Equipment as "Indigo America, Inc., a wholly owned subsidiary of Hewlett-Packard Company."  Ex. 1 at 1.

The Equipment was installed at Sandia's place of business on March 15, 2003. Exs. 2, 3, 4. Under the Purchase and Sale Agreement Sandia was provided "with a three (3) month warranty . . . on the Equipment" that began on the date the Equipment was installed. Ex. 1 at 2. The warranty period could be extended for an additional three months (to a total of six months) if Sandia signed a Shared Maintenance Agreement and completed the "required Shared Maintenance Training Course within six (6) months of [the] completion of the installation of the Equipment." *Id.* Although Sandia entered into two maintenance agreements with Indigo, Exs. 5, 6, Sandia did not complete the Shared Maintenance Training Course within six months after the installation of the Equipment. Ex. 3. Consequently, the warranty period for the Equipment expired on June 15, 2003 (three months after March 15, 2003).[3] Exs. 1, 2.

Section 8 of the Purchase and Sale Agreement, entitled "WARRANTIES; LIMITATION OF LIABILITY," expressly provides that any claim concerning the Equipment must be asserted within the warranty period. Ex. 1, § 8. In relevant part, section 8(a) provides that "*Seller warrants, for the Warranty Period described in this Agreement, each item of Equipment against defects* arising from Seller's faulty materials and workmanship, *provided . . . Seller has received, prior to the end of Warranty Period specified herein, written notice regarding a defective part of an item of Equipment . . . .*" Ex. 1, § 8(a) (emphasis added). The Purchase and Sale Agreement further provides, in capitalized letters, that this is the *only* warranty provided by Indigo to Sandia, and that otherwise Sandia shall have no claim against Indigo of any nature whatsoever:

> THE FOREGOING WARRANTY, SET FORTH IN THIS SECTION, IS
> SELLER'S SOLE AND EXCLUSIVE WARRANTY REGARDING THE
> EQUIPMENT, AND THERE ARE NO OTHER WARRANTIES
> (INCLUDING, WITHOUT LIMITATION, WARRANTIES FOR

---

[3] Even if it is assumed *arguendo* Sandia was entitled to the extended warranty, the warranty expired on September 15, 2003 (six months from March 15, 2003). Exs. 1, 2.

>CONSUMABLES AND OTHER SUPPLIES), <u>LIABILITIES OR GUARANTEES</u>, EXPRESS OR IMPLIED (INCLUDING, WITHOUT LIMITATION, ANY WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE). <u>BUYER, EXCEPT AS AFORESAID, SHALL HAVE NO CLAIM AGAINST SELLER OF ANY NATURE WHATSOEVER, WHETHER ARISING IN CONTRACT, TORT, NEGLIGENCE OF ANY DEGREE, STRICT LIABILITY OR OTHERWISE, WITH RESPECT TO THE EQUIPMENT OR ANY PART THEREOF DELIVERED HEREUNDER,</u> INCLUDING BUT NOT LIMITED TO ANY LIABILITY OF SELLER FOR ANY CONSEQUENTIAL AND/OR INCIDENTAL DAMAGES AND/OR LOSSES (INCLUDING, WITHOUT LIMITATION, LOSS OF USE, REVENUE, AND/OR PROFITS), AND IN ANY EVENT SELLER'S MAXIMUM LIABILITY TO BUYER HEREUNDER SHALL NOT, UNDER ANY CIRCUMSTANCES, EXCEED THE COST OF REPAIRING OR REPLACING (AT SELLER'S SOLE OPTION) ANY PART/S FOUND TO BE DEFECTIVE WITHIN THE WARRANTY PERIOD AS AFORESAID.

*Id.*, § 8(d) (capital letters in original; emphasis added).

Concurrent with the Purchase and Sale Agreement, in December, 2002, Sandia also entered into with Indigo a maintenance agreement entitled "hp s2000 Business Builder Program Agreement" (the "Business Builder Agreement") and, in November, 2003, a Shared Maintenance Agreement.[4] Exs. 3, 5, 6; *see also* Complaint ¶ 14. Both the Business Builder Agreement and the Shared Maintenance Agreement limit, in capitalized bold letters, the time within which Sandia can assert a claim regarding the maintenance services provided by Indigo and Indigo's potential liability. As set forth in section 12 of each agreement, the only warranty provided by Indigo was for 30-days from when the labor was performed and/or the part was replaced. Exs. 5, § 12; 6, § 12  Except for the 30-day warranty, Indigo disclaimed all other warranties, liabilities and guarantees regarding such maintenance services:

---

[4]  The Business Builder Agreement provided Sandia with a discount on maintenance services and supplies provided Sandia completed the Shared Maintenance Training Course. Ex. 5 at 1. As noted *supra*, at p. 3, Sandia failed to complete the course. *See* Ex. 3.

EXCEPT FOR THE WARRANTY PERIOD PROVIDED FOR IN THE
EQUIPMENT PURCHASE AGREEMENT, AND A THIRTY (30) DAY
WARRANTY ON LABOR PERFORMED AND PARTS REPLACED
DURING AN ON-SITE SERVICE CALL, THERE ARE NO
WARRANTIES, LIABILITIES, OR GUARANTEES, EXPRESS OR
IMPLIED (INCLUDING PATENT WARRANTIES OR WARRANTIES
OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR
PURPOSE), OR ANY NATURE WHATSOEVER, ARISING IN
CONTRACT, TORT, NEGLIGENCE OF ANY DEGREE, STRICT
LIABILITY OR OTHERWISE, WITH RESPECT TO THE
EQUIPMENT OR ANY PART THEREOF AND/OR WITH RESPECT
TO SERVICES, INCLUDING, WITHOUT LIMITATION, ANY
LIABILITIES OF SELLER FOR ANY CONSEQUENTIAL AND/OR
INCIDENTAL DAMAGES AND/OR LOSSES (INCLUDING LOSS OF
USE, REVENUE AND/OR PROFITS) OF BUYER OR ANY THIRD
PARTY.  SELLER'S MAXIMUM LIABILITY FOR ANY AND ALL
LOSSES OR DAMAGES INCURRED BY BUYER IN CONNECTION
WITH THIS AGREEMENT SHALL NOT EXCEED . . . IN RESPECT
OF SERVICES – AMOUNTS PAID BY BUYER WITH RESPECT TO
THE RELEVANT ITEM OF EQUIPMENT DURING THE THREE (3)
MONTH PERIOD IMMEDIATELY PRECEDING THE EVENT
CREATING SUCH LIABILITY . . . .

*Id.* (capital letters in original; bold deleted; emphasis added).[5]

At the time Sandia purchased the s2000 press in December, 2002, Sandia understood the

press was not then capable of printing on 30 ml plastic (the substrate).  Complaint, ¶ 10.  Sandia

allegedly understood, however, that Indigo planned to modify the press sometime in the future to

allow it to print on 30 ml plastic.  *Id.*  On August 27, 2003, just five months after the Equipment

was installed, Sandia wrote Indigo demanding that the s2000 press be modified immediately to

accommodate the thicker substrate.  Ex. 7.  Sandia alleged, *inter alia*, that in anticipation of the

Equipment being modified, Sandia had incurred the expense of moving to a larger location,

---

[5]  As did the Purchase and Sale Agreement, the Business Builder Agreement and the Shared Maintenance
Agreement provided that their "terms and conditions constitute the entire Agreement between the parties, govern the
parties' obligations relating to the Services provided hereunder, and supersede any and all other agreements, oral or
written, relating to such subject matter that may have been entered into between the parties prior to the date of this
Agreement."  Exs. 5, § 16(F); 6, § 16(F).

purchasing ancillary equipment, hiring and training a specific crew, and investing in tests and supplies.  *Id.*

Not long thereafter the parties settled Sandia's claims in a letter agreement signed by Sandia on November 7, 2003 (the "Settlement Agreement").  Complaint, ¶ 14; *see also* Ex. 4. Under the Settlement Agreement, Indigo agreed:  (1) to pay Sandia $13,000; (2) to service and maintain the Equipment for 12 months at no charge; (3) to charge Sandia a reduced rate of $0.0225 per impression, and (4) to consider Sandia as a candidate for testing a "Thick Substrates Kit."  Complaint, ¶ 14; Ex. 4.

Sandia, in turn, agreed that the Settlement Agreement

> *resolve[d] all outstanding customer satisfaction issues* between Indigo America, Inc., a wholly owned subsidiary of Hewlett-Packard Company ('HP Indigo') and Advanced Card Systems, Inc. d/b/a Sandia Imaging ('Sandia') *related to the hp indigo press s2000* purchased by Sandia under Purchase and Sale Agreement dated December 5, 2002 (the 'Purchase and Sale Agreement') and installed at [Sandia's] facility in March of this year.

Ex. 4 (emphasis added).  Sandia further agreed to release the defendants "from any all claims or damages relating to or arising from the Purchase and Sale Agreement."  Ex. 4; *see also* Complaint ¶ 14.  Sandia also agreed to keep the provisions of the Settlement Agreement confidential and not to disclose them.  Ex. 4.  The Settlement Agreement further provided that "[i]n the event Sandia fails to comply with this confidentiality requirement, this [agreement] shall become void *ab initio* and HP Indigo shall have the right to invoice Sandia pursuant to the s2000 Business Builder Program Agreement . . . retroactive to the date of this letter agreement . . . ."  Ex. 4.  The Settlement Agreement concluded by stating that if Sandia agreed to this "*resolution of all outstanding matters between HP Indigo and Sandia*," Sandia should

countersign and return the Settlement Agreement to HP Indigo. *Id.* (emphasis added). As evidenced by the second page of the Settlement Agreement, Sandia's President signed and returned the document on Sandia's behalf. *Id.*

Despite the settlement and release by Sandia of any and all claims relating to the Equipment, less than a year later, on August 24, 2004, Sandia sued HP and Indigo in state court in Texas over the Equipment.[6] In the Complaint Sandia contends the defendants (1) negligently serviced the Equipment (Count A); (2) breached "one or several contracts" concerning the Equipment (Count B); and (3) misrepresented to Sandia the cost and capabilities of the Equipment (Count D). Complaint, ¶¶ 16, 17, 19. Sandia also seeks a declaration that, because *Sandia* has violated the confidentiality provisions of the Settlement Agreement, the Settlement Agreement is now void. Complaint, ¶¶ 14, 18.

## ARGUMENT

I.     The Standard Governing a Motion to Dismiss
       And the Documents the Court May Consider.

When evaluating a motion to dismiss under Rule 12(b)(6), the court must accept as true the well-pleaded factual allegations in the Complaint and make all reasonable inferences in favor of the plaintiff. *Monahan v. Dorchester Counseling Ctr., Inc.*, 961 F.2d 987, 988 (1st Cir. 1992). To press a claim, a plaintiff is required to plead a set of facts that would entitle it to relief. While this standard is not high, it is nonetheless real, and "minimal requirements are not tantamount to non-existent requirements." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988).

Unsubstantiated conclusions, bald assertions and general allegations are not enough.  *U.S. v. AVX Corp.*, 962 F.2d 108, 115 (1st Cir. 1992); *Am. Tel. & Tel. Co. v. IMR Capital Corp.*, 888 F. Supp. 221, 251-52 (D. Mass. 1995).  Where the plaintiff's claims are "conclusively contradicted by [plaintiff's] concessions or otherwise," the Court may dismiss the complaint under Rule 12(b)(6). *Gooley*, 851 F.2d at 514 (quoting *Chongris*, 811 F.2d at 37).

When considering a motion to dismiss, courts are permitted to take into account documents whose authenticity is not disputed by the parties, documents central to the plaintiff's claim, documents sufficiently referred to in the complaint and official public records.  *Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993) (citations omitted); *Clorox Co. of Puerto Rico v. Procter & Gamble Commercial Co*., 228 F.3d 24, 32 (1st Cir. 2000); *see also Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996) (in reviewing a complaint under Rule 12(b)(6), a court "may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment").  Were this not the rule, a plaintiff might be allowed to proceed with a claim either by reason of the plaintiff's failure to disclose to the court critical provisions of a document or by describing the document in an inadequate or incomplete way.  *Id.*

Here, the Purchase and Sale Agreement, the Business Builder Agreement, the Shared Maintenance Agreement, the correspondence between the parties, and the Settlement Agreement either are explicitly referenced in or are integral to the Complaint.  *See* Complaint, ¶ 14.  The

---

[6]  The Purchase and Sale Agreement and the two maintenance agreements explicitly provide that any legal action relating to the Equipment or the maintenance services must be brought in Massachusetts. Exs. 1, § 12; 5 § 16(B), 6, § 16(B).  Consequently, after the Texas state court action was instituted, the defendants removed the case to federal court in Texas and requested Sandia to consent to transferring the case to Massachusetts.  Sandia refused, thus forcing the defendants to file a Motion to Dismiss or Transfer.  Only then did Sandia consent to the case being transferred here.

authenticity of these documents is undisputed.  Therefore, the Court may consider these

documents in ruling on the defendants' motion to dismiss without, at the same time, transforming

the motion into one for summary judgment.  *Watterson*, 987 F.2d at 3-4.

II.     The Claims for Negligence, Breach of Contract and Fraud
        Should Be Dismissed Because Sandia Explicitly Settled and
        Released Those Claims In the Settlement Agreement.

        As explained above, on November 7, 2003, the parties entered into a Settlement

Agreement whose explicit purpose was to "resolve all customer satisfaction issues" and "all

outstanding matters" between Indigo and Sandia "related to the hp indigo press s2000 purchased

by Sandia."  Ex. 4.  In exchange for payment of $13,000, a year's free maintenance service and

other consideration provided by Indigo, Sandia settled all claims concerning the Equipment and

released the defendants from any and all claims and damages relating to or arising under the

Purchase and Sale Agreement.[7]  *Id*.

        This dispute is governed by Massachusetts law.[8]  Under Massachusetts law the settlement

of disputes and the enforcement of releases is favored.  *Sharon v. City of Newton*, 437 Mass. 99,

105 (2002); *Minassian v. Ogden Suffolk Downs, Inc.*, 400 Mass 490, 492 (1987).  *See also Kattar

v. Demoulas*, 433 Mass. 1, 8 n.6 (2000) (doctrine of accord and satisfaction recognizes that the

contracting parties can agree to discharge the rights arising out of an alleged breach, thereby

extinguishing the claim); *Cuddy v. A&E Mechanical, Inc.*, 53 Mass. App. Ct. 901, 901 (2001)

---

[7]  Although the Settlement Agreement speaks in terms of HP being released from any and all claims relating to or
arising under the Purchase and Sale Agreement, it obviously includes Indigo as well in view of the parties' stated
intention to resolve "all outstanding customer satisfaction issues" and "all outstanding matters" between Indigo and
Sandia.  Ex. 4.

[8]  Section 12 of the Purchase and Sale Agreement and section 16(B) of both maintenance agreements provide that
the agreements "shall be governed by and construed in accordance with the laws of the Commonwealth of
Massachusetts."  Exs. 1, § 12; 5, § 16B; 6, § 16(B).

(the defense of accord and satisfaction is premised on the principle that where a claimant accepts

a sum to settle a claim, he cannot thereafter maintain an action to recover a greater amount).

Although the doctrines of release and accord and satisfaction are affirmative defenses that

ordinarily must be raised by way of answer, in Massachusetts it is well settled "that when 'the

complaint shows on its face the existence of an affirmative defense, the complaint does not state

a claim upon which relief can be granted, and a motion to dismiss is appropriate.'" *Giuliana v.*

*GTWO, LLC*, 2000 WL 744363 (Mass. Super. May 14, 2000) (quoting *Cavanaugh v.*

*Cavanaugh*, 396 Mass. 836, 838 (1986)); *see also Alternative Energy, Inc. v. St. Paul Fire and*

*Marine Ins. Co.*, 267 F.3d 30, 33-34 (1st Cir. 2001).

      In the Complaint Sandia alleges the defendants:  (1) negligently serviced the Equipment

(Count A); (2) breached "one or several contracts" concerning the Equipment (Count B); and (3)

misrepresented to Sandia the capabilities of, and the cost of using, the Equipment (Count D).

Complaint, ¶¶ 16, 17, 19.  Each of these claims, obviously, relate to the Equipment Sandia

purchased under the Purchase and Sale Agreement and were among the "customer satisfaction

issues" and the "outstanding matters" the parties agreed to resolve when they entered into the

Settlement Agreement in November, 2003.  For its part, Indigo has fulfilled its obligations under

the Settlement Agreement by, *inter alia*, paying Sandia $13,000 and providing Sandia with a

year of free maintenance.  Sandia, in turn, should be bound by its end of the bargain and found to

have settled and released all claims concerning the Equipment.  For these reasons, therefore,

Counts A, B and D of the Complaint should be dismissed.[9]  *See In re Boston Shipyard Corp.*,

---

[9] The claims for negligence, breach of contract and fraud also should be dismissed as against HP because, as is
evident from the three agreements and the related correspondence between Indigo and Sandia, there is no evidence
that HP played a material role in the disputed transactions with Sandia, and there is no reason to disregard HP's

886 F.2d 451, 454 (modification to contract made clear that it was to serve as a release of all claims and that parties had reached an accord and satisfaction on all possible claims); *Bradford Glen, Inc. v. Capobianco*, 62 Mass. App. Ct. 1106 (2004) (claim is barred by doctrine of accord and satisfaction where parties clearly and definitely intended to extinguish preexisting claims); *Cabot Corp. v. AVX Corp.*, 18 Mass. L. Rptr. 36, 2004 WL 1588116, *7 (Mass. Super. June 18, 2004) (where, under the doctrines of release and accord and satisfaction, court enforced agreement between the parties that was intended to resolve all matters under preexisting agreement). *See also P.L.A.Y., Inc. v. Nike, Inc.*, 1 F. Supp.2d 60, 63-64 (D. Mass. 1998) (settlement agreement operated as a substitute contract where parties intended to immediately satisfy and discharge existing claims; therefore, no action could be maintained on original contract).

III.    The Claims for Negligence and Breach of Contract Should
        Be Dismissed Because They Are Barred by the Warranty
        <u>and Limitation of Liability Clauses in the Relevant Agreements.</u>

In Count A Sandia alleges the defendants "have negligently failed to provide the services which they undertook to provide to Sandia." Complaint, ¶ 16.  In Count B Sandia asserts the defendants breached "one or several contracts" concerning the Equipment. *Id*., ¶ 17.  Both claims are barred by provisions of the Purchase and Sale Agreement, the Business Builder Agreement and the Shared Maintenance Agreement.

Under section 8(a) of the Purchase and Sale Agreement, Sandia had until June 15, 2003 to provide written notice of, or to assert, any claim concerning the Equipment.  Ex. 1, § 8(a). Aside from that three-month warranty, section 8(d) of the Purchase and Sale Agreement

---

separate corporate identity.  *See, e.g., Logan Equip. Corp. v. Simon Aerials, Inc.*, 736 F.Supp. 1188, 1205 (D. Mass. 1990).

expressly stated "THERE ARE NO OTHER WARRANTIES . . . LIABILITIES OR

GUARANTEES," and that "BUYER, EXCEPT AS AFORESAID, SHALL HAVE NO CLAIM

AGAINST SELLER OF ANY NATURE WHATSOEVER, *WHETHER ARISING IN*

*CONTRACT, TORT, NEGLIGENCE OF ANY DEGREE* . . . OR OTHERWISE, WITH

RESPECT TO THE EQUIPMENT OR ANY PART THEREOF DELIVERED HEREUNDER . .

. ." Ex. 1, § 8(d) (emphasis added).

    The Business Builder Agreement and the Shared Maintenance Agreement, in turn,

provided Sandia with a 30-day warranty from when the labor was performed and/or the part was

replaced. Exs. 5 at § 12; 6 at § 12. Except for the 30-day warranty, Indigo disclaimed all other

warranties, liabilities and guarantees of "ANY NATURE WHATSOEVER, *ARISING IN*

*CONTRACT, TORT, NEGLIGENCE OF ANY DEGREE*, STRICT LIABILITY OR

OTHERWISE, *WITH RESPECT TO THE EQUIPMENT OR ANY PART THEREOF AND/OR*

*WITH RESPECT TO SERVICES*." *Id*. (emphasis added).

    Because these provisions are unambiguous, Massachusetts law requires that they be

enforced according to their terms. *See Agri-Mark, Inc. v. Niro, Inc.*, 233 F. Supp.2d 200, 209 (D.

Mass. 2002); *116 Commonwealth Condominium Trust v. Aetna Cas. & Sur. Co.*, 433 Mass. 373,

376 (2001). Massachusetts law further provides that limitation of liability provisions like those

in the Purchase and Sale Agreement and the maintenance agreements are enforceable.[10] *See,*

---

[10] Under Massachusetts law, parties are permitted to agree by contract to a limitation of their liability as long as the limitation is not unconscionable. *See* M.G.L. § 2-719 (2003) (parties permitted to agree to remedies in addition to or in substitution of those provided in U.C.C.); *Agri-Mark*, 233 F. Supp.2d at 211-12 (enforcing provision excluding consequential damages); *Deerskin Trading Post, Inc. v. Spencer Press, Inc.*, 398 Mass. 118, 124 (1986) (limiting damages to refund of purchase price is a reasonable business practice where parties are sophisticated business entities and consequential damages could be excessive). When determining whether a clause is unconscionable, the court may consider: (1) the sophistication of the parties; (2) the plaintiff's clear intent to accept the risk of consequential damages; and (3) the existence of a minimally adequate remedy. *See Agri-Mark,* 233 F. Supp.2d at

*e.g.*, *Logan Equip. Corp.*, 736 F. Supp. at 1195; *Northridge Homes, Inc. v. John W. French &*
*Assoc., Inc.*, 10 Mass. L. Rptr. 690, 1999 WL 1260285, *4-5 (Mass. Super. November 15, 1999)
(there is no bar in Massachusetts to enforcing a contract provision which sets the date on which
the statute of limitation would begin to accrue.); *see also Canal v. Westinghouse Elec. Corp.*, 406
Mass 369, 374-75 (1990) (enforcing provision excluding consequential damages).

Sandia does not allege—because it cannot allege—that it notified the defendants in
writing of an alleged problem with the Equipment before the warranty expired on June 15, 2003
(as required by the Purchase and Sale Agreement).  Nor does Sandia allege that the defendants
negligently performed services on the Equipment in the 30-day period preceding the filing of the
Complaint (as required by the Business Builder and Shared Maintenance Agreements).  In view
of the terms of the warranty and limitation of liability provisions of the three agreements—and
Sandia's express agreement to waive claims for breach of contract and negligence under the
agreements—the claims for negligence and breach of contract in Count A and Count B,
respectively, should be dismissed.

IV.    The Claim to Void the Settlement Agreement
       Is Barred by Sandia's Unclean Hands.

In the Complaint Sandia asserts that, because of "noncompliance with [the]
confidentiality provision" in the Settlement Agreement, Complaint, ¶ 14, Sandia is entitled to

---

211. Here, the limitation on liability clause is not unconscionable because (1) the parties are both sophisticated
business entities (as evidenced by the Settlement Agreement Sandia negotiated for itself), (2) Sandia agreed to the
limitation on damages provisions when it entered into the Purchase and Sale Agreement and the maintenance
agreements; and (3) there was a sufficient remedy provided under the contracts—the cost of repairing or replacing
the defective parts during the warranty period and/or refunding the amount paid for parts and labor for 30-days
following a service call.  *See Agri-Mark*, 233 F. Supp.2d at 211.  Accordingly, section 8(d) in the Purchase and Sale
Agreement and section 12 in the Business Builder and Shared Maintenance Agreements should be enforced
according to their terms.

have the Court find that the Settlement Agreement is void *ab initio*. *Id.*, ¶ 18. This contention is absurd.

As mentioned above, the Settlement Agreement imposed certain confidentiality obligations on *Sandia*, not on HP or Indigo. In relevant part, the Settlement Agreement provided:

> . . . *Sandia agrees that this Letter Addendum, and all matters contained here as well as any actions taken by the parties hereto, shall be held in the strictest of confidence and shall not be disclosed by Sandia* . . . to any third party without the prior written consent of HP Indigo. *In the event Sandia fails to comply with this confidentiality requirement, this Letter Addendum shall become void ab initio* and HP Indigo shall have the right to invoice Sandia pursuant to the s2000 Business Builder Agreement . . . between the parties, retroactive to the date of this letter agreement . . . .

Ex. 4 (emphasis added).

In view of the express terms of the Settlement Agreement, it is clear that only Indigo possessed the right to void the agreement if Sandia breached its confidentiality provisions. The parties did not agree, and it is foolish for Sandia to contend, that Sandia could have the settlement and release obligations in the agreement declared void by violating its confidentiality obligations. Indeed, such a result is expressly prohibited here in Massachusetts by the doctrine of unclean hands. *See Precision Instrument Mfg. Co. v. Auto Maint. Mach. Co.*, 324 U.S. 806, 814 (1945) ("he who comes into equity must come with clean hands"); *Amerada Hess Corp. v. Garabedian*, 416 Mass. 149, 156 (1993) (the doctrine of unclean hands denies equitable relief to one tainted with inequitableness or bad faith stemming from the matter in which it seeks relief). For this reason, therefore, the attempt by Sandia in Count C to void the Settlement Agreement should be dismissed.

-14-

V.     The Claim for Fraud Also Should be Dismissed Because
       <u>Sandia Has Not Pleaded Fraud with the Requisite Specificity.</u>

The claim for fraud also should be dismissed Sandia has failed to identify specifically the alleged misrepresentations and when they were made.

Under Massachusetts law a claim for fraud requires the plaintiff to establish that the defendant "made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff reasonably relied upon the representation as true and acted upon it to his damage."  *Danca v. Taunton Sav. Bank*, 385 Mass. 1, 8 (1982).  Rule 9(b) of the Federal Rules of Civil Procedure requires that "all averments of fraud [and] . . . the circumstances constituting fraud . . . shall be stated with particularity."  As a matter of law, this requires the plaintiff to specify "the time, place and content of an alleged false representation . . . ."  *McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228 (1st Cir. 1980). This special pleading requirement is designed to ensure that the defendant is provided with "notice of the grounds on which plaintiff's fraud claim rests."  *Id*. at 228-229.

Sandia has not pleaded the time, place or content of the fraud.  Instead, the Complaint refers only generally to "representations regarding the cost of production" allegedly made in the "summer of 2002," without identifying precisely what statements were made, when they were made, or what precisely was said which Sandia alleges was untrue.  For these reasons as well, therefore, the claim for fraud in Count D is deficient and should be dismissed.[11]  *See, e.g., Wayne Inv., Inc. v. Gulf Oil Corp.*, 739 F.2d 11, 13 (1st Cir. 1984) (upholding dismissal of fraud claim because unspecific allegations did not show that a fraud was committed).

---

[11]  To the extent Sandia's fraud claim conflicts with the terms of the Purchase and Sale Agreement and the maintenance agreements, it is barred by the agreements' integration clauses. *See, e.g., Turner v. Johnson & Johnson*, 809 F.2d 90, 97 (1st Cir. 1986); *Starr v. Fordham*, 420 Mass. 178, 188 (1995).

## CONCLUSION

For the reasons stated above, the plaintiff's Complaint should be dismissed.

Respectfully submitted,


_____/s/ E. Page Wilkins_____
Kevin P. Light (BBO #300110)
E. Page Wilkins (BBO #654535)
CHOATE HALL & STEWART
Exchange Place
53 State Street
Boston, MA  02109-2804
 (617) 248-5000


Dated:  December 3, 2004

-16-