UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ADVANCED CARD SYSTEMS, INC. d/b/a SANDIA IMAGING, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 04 C 12295 NG |
| HEWLETT-PACKARD COMPANY and INDIGO AMERICA, INC. | ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

Defendants moved to dismiss Plaintiff's petition on several grounds, some are procedural and some are substantive. As for Defendants claims that Plaintiff has not met certain federal pleading requirements, Plaintiff responds that this is a removal case. The petition filed in Tarrant County met the pleading requirements of the Texas state courts. To resolve that issue, Plaintiff is filing, contemporaneously herewith, an amended pleading which Plaintiff believes meets the requirements of the Federal rules of Civil Procedure, particularly the allegations related to Defendants' fraudulent conduct.

Substantively, Defendants have asserted that Plaintiff's claims are barred because of an alleged release of claims and warranty disclaimers. In this response, Plaintiff will show that, construing the facts in the light most favorable to Plaintiff, the Court cannot rule, as a matter of law, that the referenced documents serve to bar Plaintiff's claims.

In support of its motion, Defendants have attached selected agreements and correspondence, independent of the complaint, and have failed to advise the Court of the

existence of other contradictory agreements and communications between the parties. Selective excerpting of documents and communications, appended to a motion to dismiss is impermissible. *See Watterson v. Page,* 987 F.2d 1, 3 (1st Cir. 1993) (Under Rule 12(b)(6) it is improper to consider documents not attached to the complaint or expressly incorporated therein).

The transaction took many months to complete, several written agreements (many beyond those submitted by Defendants in support of their Motion to Dismiss) and numerous emails, letters and face to face communications. There were additional agreements related to the financing of the transaction. The complexity and the length of the transaction precludes a summary evaluation based upon selected excerpts.

Defendant Hewlett Packard Company has moved for dismissal of the claims against it because it "was not involved in the disputed transactions." (Def. Motion to Dismiss Memo. of Law p.1). The motion is not supported by the facts and is contrary to the allegations of the Amended Complaint. For example, the so-called settlement agreement, attached to Defendants' Motion to Dismiss as Exhibit 4, is written and signed by "George Krikorian, Vice President, Finance … Hewlett Packard Company." For the reasons set forth herein, Hewlett Packard's motion should be denied.

**ARGUMENT**

**I.     Standard governing a Rule 12(b)(6) Motion to Dismiss.**

When evaluating the sufficiency of Sandia's complaint pursuant to Rule 12(b)(6), this Court must accept as true all factual allegations of the complaint, as well as any inference which can be drawn therefrom in the Sandia's favor. *Eayl v. Helen Broadcasting Corp.,* 411 Mass. 426, 429, 583 N.E.2d 228, 230 (1991). The plaintiff "need only surmount a minimal hurdle to survive a motion to dismiss for failure to state a claim." *Andrews v. Cressy,* 1998 WL 157002,

\*2 (Mass. Super. March 4, 1998) (citations omitted). A motion to dismiss should only be granted if "it appears beyond doubt that the plaintiff cannot prove any set of facts in support of [its] claim which would entitle [it] to relief." *Negron-Guatztambide v. Hernandez Torres,* 35 F.3d 25, 27 (1st Cir. 1994) (citation omitted). The Amended Complaint, filed as a matter of right with this response, disposes of the alleged pleading defects and defenses claimed by Defendants.

Defendants' argue that in determining its motion this court in addition to the agreements entered into between the parties it may consider the correspondence between the parties even though it has not been attached to any previous pleadings. This is not proper . When considering a motion to dismiss it is improper to consider documents not attached to the complaint or expressly incorporated therein. *Watterson v. Page,* 987 F.2d 1, 3 (1st Cir. 1993). Defendants seek to have this Court consider correspondence which is neither explicitly referenced in or an integral part of the Complaint.

**II.     The purported settlement agreement does not bar Plaintiff's claims for negligence, breach of contract and fraud.**

As a preliminary matter, although there is a contractual choice of law provision in the Purchase and Sale Agreement (Def. Motion to Dismiss Ex. 1) that calls for the application of Massachusetts law, the same restriction does not appear in all of the agreements entered into between the parties, including the purported settlement agreement (Def. Motion to Dismiss Ex. 4). Additionally, the choice of law provision would not apply universally, especially to Plaintiff's non-contract tort claims. See e.g. *Kitner v. CTW Transport, Inc.*, 53 Mass App. Ct. 741, 746-7 (2002) (Massachusetts Deceptive Trade Practices claim could survive despite contractual choice of law specifying North Dakota law would apply when choice of law clause not sufficiently broad enough to cover tort claims); *Pizzeria Uno of Kingston, Inc. v. Independence Mall Group*, 11 Mass. L. Rptr. 241, 1995 WL 419932 (Super. Ct. July 13, 1995).

There is no substantial difference between Massachusetts and Texas law relative to the issues presented here, and Plaintiff will offer citations to Massachusetts law, however this should not be construed as an admission that Massachusetts law would apply to all aspects of the case.

    a.    **The purported settlement agreement by its own terms does not bar claims that accrue after the agreement was executed.**

The written language of the purported settlement seeks to resolve "all outstanding matters between HP Indigo and Sandia," however, when HP Indigo continued its fraudulent and deceptive conduct by continuing to promise and delay modifications to make the s2000 capable of processing 30ml plastic cards, this conduct was not then in existence or "outstanding." Thus the purported agreement cannot be construed to have settled unknown and non-existent conduct. If Defendants intended to bar future claims, it could have included such language when it drafted the agreement. *Armstrong v. Rohn and Haas Co.*, 2004 WL 2785270 at * 3-4 (D. Mass. Oct. 14, 2004.) But Defendants, against whom all ambiguities must be construed, chose not to negotiate or draft an agreement with such language. Narrowly construing the language of Defendants' agreement, it addresses only the purchase and sale agreement and any outstanding claims relating to that agreement. Consequently, even if the release is deemed valid (and not an instrument of Defendants continuing misrepresentation and fraud, see *infra*), allegations of subsequent conduct and agreements are not released. At the very least, the purported settlement agreement is ambiguous as to whether it bars future claims that may accrue and as such presents a question of fact for the jury to decide. *WILJ Int'l. Ltd. v. Biochem Immonusystems, Inc.*, 4 F. Supp.2d 1, 7 (D. Mass. 1998).

    b.    **The purported settlement agreement was part and parcel to Defendants scheme to defraud Plaintiff, and as such it cannot be held to bar Plaintiff's claims as the settlement agreement was fraudulently procured.**

135355-1                                                                                                           4

The Amended Complaint resolves previous deficiencies in factual particularity and makes it amply clear that there was a continuing, ongoing scheme to defraud Plaintiff. The execution of the purported settlement agreement was just another step in furtherance of the fraud perpetrated by Defendants. It was presented to Plaintiff to induce plaintiff to forego its rights to reject the machine and pursue a claim for breach of contract. (See Amended Complaint). The agreement was procured by fraud, and as such it is ineffective to bar Plaintiff's claims. *See e.g. Capital Investment properties, Inc. v. DiGuiseppe*, 51 Mass. App. Ct. 1111, 2001 WL 590047 at *3 (Mass. App. Ct. June 1, 2001); Lycos *v. Internet Venture Works, Inc.*, 2003 WL 21146661 at * 1 (D. Mass. May 19, 2003).

    **c.    Pursuant to the specific language of the purported settlement agreement the agreement would became void *ab initio* upon the occurrence of the condition subsequent.**

Defendants drafted the settlement agreement and the agreement must be strictly construed against the drafter. Therefore any ambiguity in the terms of the agreement should be construed against Defendants. *Nadherny v. Roseland Property Company, Inc.*, 390 F.3d 44, 49 (1st Cir. 2004) *citing Kerkhof v. MCI WorldCom, Inc.*, 282 F.3d 44, 51 (1st Cir. 2002). The Defendants chose to insert the provision that the settlement agreement would become void *ab initio* should Plaintiff disclose the dispute between itself and Defendants. Under Massachusetts law a contract that is void *ab initio* is void from the beginning and cannot be enforced. *Soliman v. Digital Equipment Corp.*, 869 F.Supp. 65, 68 (D. Mass. 1994). Defendants inserted this provision and expressly gave themselves the right to invoice Sandia for certain services in the event Plaintiff disclosed the dispute publicly. This was an anticipated condition subsequent, and a contractually provided remedy. Defendants made sure they clearly stated what the consequence would be in the event that Plaintiff chose to pursue certain defined conduct.

135355-1                                                           5

Plaintiff elected to pursue the conduct knowing the contractual consequence. Defendants now find themselves in the position of advocating a self-contradiction, that they didn't write what they meant.

### III. Sandia's claims for Negligence and Breach of Contract are not barred because of Limited Liability provisions contained in relevant agreements.

Defendants argue that Sandia's claims for negligence and breach of contract should be dismissed because the warranty and limited liability provisions in the relevant agreements bar them. (Def. Motion to Dismiss Memo. of Law p. 11). Defendants are incorrect because they ignore critical facts which entitle Sandia to seek relief for Defendants' negligence and breach of contract.

Section 8(a) of the Purchase and Sales Agreement provides, in relevant part, that "Seller warrants, for the Warranty Period described in this Agreement, each item of Equipment against defects. . . provided. . .Seller has received, prior to the end of the Warranty Period. . . written notice regarding a defective part of an item of Equipment…" (Defendants' Ex. 1, § 8(a)). Pursuant to the terms of the Agreement, the Warranty Period was for three months, commencing on the date of installation of the equipment, with an option for an additional three months of warranty, "thereby extending the Warranty Period to a total of six (6) months if Buyer (i) contemporaneously with the execution of this [Agreement], executes a one (1) year agreement. . . for Shared Maintenance. . .and (ii) completes the required Shared Maintenance Training Course within six (6) months. . .of installation of the Equipment." (Defendants' Ex. 1, page 2). Defendants' argue that Sandia did not notify defendants in writing of any alleged problem with the equipment before the warranty expired and further argue that Sandia did not complete the Shared Maintenance Training Course within the specified time so that the warranty period

135355-1                                       6

expired on June 15, 2003.[1]  (Def. Motion to Dismiss Memo. of Law p. 3, 13).  Defendants' are incorrect on two grounds.

First, the warranty period <u>did not</u> expire on June 15, 2003.  The warranty period was extended for six months from the date of installation and not three months as Defendants' purport.  As reflected in Sandia's Amended Complaint, Sandia did in fact fully comply with the requirement that one of its qualified operators complete Defendants Shared Maintenance Training Course.  (Plaintiff's Amended Complaint, para. 23).  As evidence of such, Sandia attached to its Amended Complaint a "Certificate of Completion" issued to one of Sandia's employees by Defendant Indigo whereby Defendant Indigo recognized the successful completion of the training course.  (Amended Complaint, Exhibit E).  Thus, the warranty would have expired on September 15, 2003, six months from the date of installation.

Second, Sandia timely notified Defendants of the deficiencies and problems with the Indigo s2000 printing press on several occasions.  From the moment the s2000 was installed, Sandia made numerous complaints to Defendants, all within the six month warranty period, regarding defects of the s2000 and its failure to print on 30 ml substrate.  (Amended Complaint, para. 15, 16).  In response, Defendants promised Sandia that it would correct the problem and retrofit the equipment so that it would print on 30ml substrate by February 2003.  (Id.).  However, Defendants did not correct the problem by February and instead kept promising Sandia that a retrofit would occur by April 2003 and then by May 2003.  (Id.).  Furthermore, on August 25, 2003, Sandia sent a letter to Defendant Indigo reiterating the defects and problems it was having with the s2000 and its failure to print on 30ml substrate as represented and promised over

---

[1] It is undisputed that concurrent with the Purchase and Sales Agreement Sandia executed an Agreement for Shared Maintenance. In fact Sandia executed two agreements for Shared Maintenance. (*See* Defendants' Ex. 5, 6).  Thus the only issue, for purposes of analyzing if Sandia was entitled to a three or six month warranty is to determine whether Sandia in fact completed the Shared Maintenance Training Course.

135355-1                                                          7

and over again by Defendants. (See Amended Complaint, Ex. D). Thus, Defendants not only had timely actual notice of the defects but also written notice of the same. Nevertheless, Defendants' ignore these critical facts. Despite receiving adequate notice of the defects, Defendants continuously failed to repair the defects and failed to live up to its service warranty of repairing or replacing defective parts.

Defendants also argue that Sandia's claims for breach of contract and negligence should be dismissed because the relevant agreements contain a limited liability provision whereby Sandia's only warranty consists of repairing or replacing defective parts. (Def. Motion to Dismiss Memo. of Law p. 12-13). Section 8(d) of the Purchase and Sales Agreement provides in pertinent part that:

> THERE ARE NO OTHER WARRANTIES…EXPRESS OR IMPLIED (INCLUDING, WITHOUT LIMITATION, ANY WARRANTIES OF MERCHANTIBILITY OR FITNESS FOR A PARTICULAR PURPOSE). BUYER, EXCEPT AS AFORESAID, SHALL HAVE NO CLAIM AGAINST SELLER OF ANY NATURE WHATSOEVER, WHETHER ARISING IN CONTRACT, TORT, NEGLIGENCE OF ANY DEGREE……WITH RESPECT TO THE EQUIPMENT…AND/OR WITH RESPECT TO ANY NONCONFORMANCE OR DEFECT…

(Defendants' Ex. 1, § 8(d)). Defendants' motion to dismiss Sandia's claims for breach of contract and negligence should be denied despite this provision. The limitation of liability provision is invalid because it is unconscionable.

Section 2-719(1)(a) of Massachusetts codification of the Uniform Commercial Code, permits parties to "limit or alter the measure of damages recoverable. . . as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts." MASS. GEN. LAWS ANN. ch. 106, § 2-719(1)(a) (West 2004). Further, Section 2-719(3) provides that "[c]onsequential damages may be limited or excluded unless the limitation or exclusion is unconscionable." MASS. GEN. LAWS ANN. ch.

135355-1                                    8

106, § 2-719(3) (West 2004).  One of the bases for which a limitation of liability provision may be found unconscionable is if it leaves one of the contracting parties without "minimum adequate remedies."  *Canal Electric Co. v. Westinghouse Electric Co.,* 973 F.2d 988, 996 (1st Cir. 1992); *See also* MASS. GEN. LAWS ANN. ch. 106, § 2-719 (West 2004), Comment 1 ("[I]t is the very essence of a sales contract that at least minimum adequate remedies be available").  It is well established that where a repair or replace remedy provision deprives the buyer of minimum adequate remedies, the warranty will be said to have failed of its essential purpose.  *See Boston Helicopter Charter, Inc. v. Agusta Aviation Corp.,* 767 F. Supp. 363, 373-74  (D. Mass. 1991) (recognized that a remedy fails its essential purpose where the seller is either "unwilling or unable" to conform the goods to the contract) (*citing Chatlos Systems, Inc. v. National Cash Register Corp.,* 635 F. 2d 1081, 1085 (3d Cir. 1980).

In the instant matter, the limitation of liability provision contained in Section 8(d) of the Purchase and Sales Agreement is unconscionable.  Specifically, the repair or replace remedy contained Section 8(d) fails its essential purpose because while Sandia made numerous complaints to Defendants about the defects of the s2000, Defendants never repaired the s2000 but continued to make empty promises to Sandia that such a repair would be forthcoming, all the while knowing that it was unable to conform the s2000 to print on 30 ml substrate.  *Id.*; *See also Fiorito Bros., Inc. v. Fruehauf Corp.,* 747 F.2d 1309, 1313 (9th Cir. 1984) (repair or replace remedy found to have failed its essential purpose as a matter of law where the seller completely refuses to honor its duty to repair or replace).  Sandia was left without a minimum adequate remedy, as such the limited liability clause at Section 8(d) is unconscionable and therefore invalid.

However, even if this Court holds that the limited liability clauses are valid they may nonetheless be unenforceable if Sandia succeeds in proving fraudulent inducement. *See Polonsky v. Union Federal Savings & Loan Assoc.,* 334 Mass. 697, 701 (1956) (a party to a contract is only bound by any limitation of liability therein contained, in the absence of fraud); *See also Shaw's Supermarkets, Inc. v. Delgiacco,* 410 Mass. 840, 842 (1991) (if plaintiff succeeds in proving fraudulent inducement, the entire contract, including the limitation on liability clause, would be voidable).

Additionally or alternatively, the fact that the Purchase and Sale Agreement contains a disclaimer for all warranties, including express warranties, does not negate or limit the express warranty created for Sandia when Defendants' presented Sandia with several samples of 30 ml plastic cards.[2] Additionally, Defendants' continuous promises to retrofit the s2000 press so that it would print on 30 ml substrate also constituted an express warranty.[3] Section 8(d), which purportedly disclaims express and implied warranties is inoperative because the disclaiming language is inherently inconsistent with the express warranties. *Sosik v. Albin Marine,* 2003 WL 21500516, * 5 (Mass. Super. May 28, 2003) (disclaimer of express warranties found to be inoperative because it was inconsistent with seller of boats express warranty to service buyers boat in Maine and its express warranty that a particular engine was suitable for use in buyers boat when in fact it was not); *See L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.,* 9 F. 3d 561 (7th Cir. 1993) (seller's disclaimer of warranties was potentially ineffective because seller's statements that data processing and communications system will satisfy all of buyer's

---

[2] Under the Uniform Commercial Code "[a]ny sample or model that is made part of the basis of the bargain created an express warranty that the whole of the goods shall conform to the sample or model." M.G.L.A. c. 106 § 2-313(c).
[3] Express warranties by the seller to the buyer are also created when an "affirmation of fact or promise [is] made by the seller which relates to the goods and becomes part of the basis of the bargain…[such] that the goods shall conform to the description." M.G.L.A. c. 106 § 2-313(a).

objectives gave rise to an express warranty); *See also Giarratano v. Midas Muffler,* 630 N.Y.2D 656 (N.Y. City Ct. 1995) (recognized that an express warranty clause should prevail over a limitations clause because the two clauses conflicted with each other). Thus, Sandia should not be barred from enforcing its rights under the express warranty.

**IV.    Plaintiff's conduct in communicating its problems with Defendants' sales techniques and service does not constitute unclean hands.**

Defendants argue that Sandia has unclean hands and should be precluded from avoiding the purported settlement agreement. This argument is based upon Sandia's election to publicly discuss its transactional history with Defendants. There are no allegations of defamation, nor was Sandia's conduct wrongful in any legal or ethical sense. The contract contemplated such a course of conduct and provided a specific contractual consequence. The provision at issue, the one which Defendants drafted, clearly stated that if Sandia publicly discussed the settlement agreement or the transactional disputes, the agreement will become "void *ab initio* and HP Indigo shall have the right to invoice Sandia pursuant to the hp s2000 Business Builder and Program Agreement (with an Agreement Commencement Date of 3/13/03) between the parties, retroactive to the date of this letter agreement, as if same had not been executed." (Def. Motion to Dismiss Exhibit 4.). This is a condition subsequent and was inserted by defendants. Unclean hands is an equitable defense, such equity is not warranted here when Defendants themselves explicitly chose appropriate legal remedies for that cause of action.

**V.    Defendants' argument that Sandia's claim for fraud should be dismissed for failure to meet certain pleading requirements is premature.**

Defendants argue that Sandia's claim for fraud should be dismissed because Sandia has failed to comply with certain pleading requirements set forth in Rule 9(b) of the Federal Rules of Civil Procedure. (Def. Motion to Dismiss Memo. of Law p. 15). Sandia concedes that Rule 9(b)

135355-1                                                            11

imposes special pleading requirements, not present in the Texas state courts. Any such defects have been addressed in the Amended Complaint. Since no responsive pleadings have been filed by Defendants, Sandia has filed an Amended Complaint contemporaneous with the filing of its response.

## **CONCLUSION**

For the reasons stated above, Plaintiff respectfully requests that Defendants' Motion to Dismiss be denied.

                          Respectfully submitted,
                          ADVANCED CARD SYSTEMS, INC.
                          d/b/a SANDIA IMAGING
                          by its attorneys,

                          /s/ John T. Hugo_____
                          John T. Hugo, BBO # 567262
                          Jennifer B. Furey, BBO # 634174
                          COOLEY MANION JONES LLP
                          21 Custom House Street
                          Boston, MA 02110
                          (617) 737-3100
                          facsimile (617) 737-0374

                          and

                          Frank Hill
                          HILL GILSTRAP
                          1400 W. Abram St.
                          Arlington, TX 76013
                          (817) 261-2222
                          facsimile: (817) 274-9724

Dated: December 27, 2004