UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ADVANCED CARD SYSTEMS, INC. )<br>d/b/a SANDIA IMAGING, )<br>  )<br>       Plaintiff, )<br>    v. )<br>  )<br>HEWLETT-PACKARD COMPANY )<br>and INDIGO AMERICA, INC., )<br>  )<br>       Defendant )  | Case No. 04 cv 12295 NG |

**REPLY MEMORANDUM IN SUPPORT
OF DEFENDANTS' MOTION TO DISMISS**

In response to the Motion to Dismiss filed by defendants Hewlett-Packard Company ("HP") and Indigo America, Inc. ("Indigo") (collectively, the "defendants"), plaintiff Advanced Card Systems, Inc. d/b/a Sandia Imaging ("Sandia") has filed both an Amended Complaint under Fed. R. Civ. P. 15(a) and Plaintiff's Response to Memorandum in Support of Defendants' Motion to Dismiss (the "Response"). In the Amended Complaint, Sandia has withdrawn the negligence claim and the declaratory judgment claim to void the Settlement Agreement contained in Counts A and C, respectively, of the original Complaint – thus acknowledging that the original Complaint had factual and legal deficiencies that warranted the dismissal of those claims.

Despite the attenuated arguments in Sandia's Response, it remains clear that the express terms of the Settlement Agreement, the Purchase and Sale Agreement and the maintenance agreements defeat Sandia's claims. Because Sandia is unable to refute the controlling and dispositive language of those agreements, Sandia has adopted the only strategy available to it:

contending the agreements allegedly were procured through fraud and should not be enforced. As part of that strategy, in the Amended Complaint Sandia has asserted a claim for negligent misrepresentation in addition to the claims it asserted in the original Complaint for breach of contract and fraud.[1]  Unfortunately for Sandia, the Amended Complaint fares no better than its predecessor in that it still fails to state a claim upon which relief can be granted.

First, given Sandia's admissions, it is clearer than ever that the Settlement Agreement bars Sandia's claims.  Sandia admits in the Amended Complaint that it voluntarily entered into the Settlement Agreement and that the agreement itself expressly provides that the parties settled, and that Sandia released the defendants from, all claims concerning the digital press (the "Equipment") and the Purchase and Sale Agreement.  Because all of the causes of action in the Amended Complaint, including the claim for fraud, concern only the Equipment and the Purchase and Sale Agreement, they have been settled and released and are barred.

In an attempt to sidestep the Settlement Agreement, Sandia argues it released the defendants only from preexisting claims, and not from claims that arose after the parties entered into the Settlement Agreement.  Sandia is wrong; the release is not limited temporally.  Moreover, the point is immaterial.  *All* of the allegations in the Amended Complaint concerning the defendants' alleged misrepresentations and breach of contract concern events that occurred *before* the parties entered into the Settlement Agreement.  Thus, by Sandia's own admission, those claims are barred.

---

[1] Because Sandia's claims for fraud and breach of contract in the Amended Complaint are substantively identical to the same claims in the original Complaint, the defendants and Sandia have agreed that, together with this reply, the defendants' Motion to Dismiss and the memorandum in support thereof shall apply to the Amended Complaint.

Sandia also contends the Settlement Agreement was obtained by fraud and, therefore, should not be enforced. This argument is completely unsupported. Federal Rule of Civil Procedure 9(b) requires Sandia to allege with particularity the facts supporting its claim for fraud. Yet Sandia has failed to plead a single fact to support the claim that the Settlement Agreement was fraudulently procured. Further, the undisputed facts prove that the defendants fulfilled each of the commitments they undertook in the Settlement Agreement, thus affirmatively refuting the claim that the Settlement Agreement was fraudulently obtained and should be nullified.

Second, and equally important, as a result of additional facts pleaded in the Amended Complaint, Sandia's claims should be dismissed for a new and independent reason: because they were not, as required by section 12 of the Purchase and Sale Agreement, brought within one year of when they arose. Sandia alleges in the Amended Complaint that it became aware the defendants had misrepresented the capabilities of the Equipment and breached the Purchase and Sale Agreement in March, 2003. Section 12 of the Purchase and Sale Agreement required Sandia to commence an action concerning any such claims within one year of when they arose. Sandia did not file suit against the defendants until August, 2004 – 17 months after the alleged breach occurred and Sandia became aware of the alleged misrepresentation. Thus, the claims are barred by the terms of the Purchase and Sale Agreement.

Finally, as before, the express terms of the Purchase and Sale Agreement and the maintenance agreements defeat Sandia's claims. Although Sandia attempts to circumvent the agreements by arguing they were procured through fraud, the fraud claim was resolved in the Settlement Agreement and cannot be resurrected here. Further, Sandia's claim that the warranty

provisions in those agreements should not be enforced because they failed of their essential purpose is demonstrably untrue.

For these and the other reasons explained below, the Amended Complaint should be dismissed under Rule 12(b)(6).

I.   SANDIA'S CLAIMS FOR FRAUD, NEGLIGENT MISREPRESENTATION AND BREACH OF CONTRACT ARE BARRED BY THE SETTLEMENT AGREEMENT.

   A.   The Court May Consider the Settlement Agreement in Evaluating the Sufficiency of the Amended Complaint.

Sandia begins its attack by asserting that the Court should not consider the October 27, 2003, Settlement Agreement (and other correspondence between the parties) because it is "neither explicitly referenced in or an integral part of the Complaint." Response, p. 3. Sandia is wrong. Paragraphs 19 and 20 of the Amended Complaint explicitly reference the Settlement Agreement. Moreover, in paragraph 20 of the Amended Complaint Sandia admits the Settlement Agreement is authentic, acknowledging that it "signed [the] . . . letter agreement on October 27, 2003." Thus, the Court may properly consider the Settlement Agreement in evaluating the Amended Complaint under Rule 12(b)(6) without transforming the defendants' motion into one for summary judgment. *Clorox Co. of P.R. v. Procter & Gamble Commercial Co.*, 228 F.3d 24, 32 (1st Cir. 2000); *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996).

   B.   Sandia Settled and Released the Defendants from All Claims Concerning the Equipment's Alleged Inability to Print 30 ml Plastic Cards.

It is clear from the allegations in the Amended Complaint that Sandia's claims for fraud, negligent misrepresentation and breach of contract (Amended Complaint, ¶¶ 21-23) stem from a single contention: the alleged inability of the Equipment to print 30 ml plastic cards. *See* Amended Complaint, ¶¶ 14-20. By its express terms, the Settlement Agreement resolved "all

-4-

outstanding customer satisfaction issues" concerning the Equipment, Ex. 1 (attached hereto), which is to say all claims (whether for fraud, negligent misrepresentation and/or breach of contract) concerning the alleged inability of the digital press to print 30 ml plastic cards.  The Settlement Agreement also provided that Sandia released the defendants "from any and all claims or damages relating to or arising from the Purchase and Sale Agreement."  Ex. 1.  Sandia contends the defendants' misrepresentations induced Sandia to enter into the Purchase and Sale Agreement, and that the Purchase and Sale Agreement was breached by the Equipment's alleged inability to print on 30 ml plastic.  As such, those claims "relate to or arise from" the Purchase and Sale Agreement and have been released.  In short, therefore, all of Sandia's claims are barred by the Settlement Agreement and must be dismissed.  *See In re Boston Shipyard Corp.*, 886 F.2d 451, 454 (1st Cir. 1989) (modification to contract made clear it was to serve as a release of all claims and that parties had reached an accord and satisfaction on all possible claims); *Nauskeag Inn, Inc. v. Rideout*, 351 Mass. 353, 355-56 (1966) (release of all claims "arising out of the sale . . . of the inn" included claims for fraud and misrepresentation); *Bradford Glen, Inc. v. Capobianco*, 62 Mass. App. Ct. 1106 (2004) (claim is barred by doctrine of accord and satisfaction where parties intended to extinguish preexisting claims); *Cabot Corp. v. AVX Corp.*, 18 Mass. L. Rptr. 36, No. 032125BLS, 2004 WL 1588116, at *7 (Mass. Super. Ct. June 18, 2004) (where, under the doctrines of release and accord and satisfaction, court enforced agreement between the parties that was intended to resolve all matters under preexisting agreement).

    In an attempt to avoid the dispositive effect of the Settlement Agreement, Sandia argues the Settlement Agreement does not bar claims that arose after the Settlement Agreement was

executed. Sandia is mistaken. Unlike the case cited by Sandia, the release contained in the Settlement Agreement is not limited in time; rather, it applies to "any and all claims relating to or arising from the Purchase and Sale Agreement."[2] Ex. 1. Thus, despite Sandia's contention otherwise, it is clear the defendants have been released from all claims concerning the alleged inability of the Equipment to print 30 ml plastic cards regardless of when those claims arose. *Kiewit-Atkinson-Kenny v. Mass. Water Res. Auth.*, No. 011920BLS, 2002 WL 31187691, at *18 (Mass. Super. Ct. Sept. 3, 2002) (settlement of all claims regarding contact grouting system barred plaintiff from asserting grouting-related claims that arose after the settlement agreement). Indeed, it is illogical to think the defendants would agree on Monday to pay Sandia $13,000 and provide it with a year's free maintenance only so Sandia could, on Tuesday, again threaten to sue the defendants if the Equipment malfunctioned. *City of Haverhill v. George Brox, Inc.*, 47 Mass. App. Ct. 717, 720 (1999) (justice and common sense require a contract to "be given a construction which will make it a rationale business instrument and will effectuate what appears to have been the intention of the parties.") (quoting *Bray v. Hickman*, 263 Mass. 409, 412 (1928)). *See also New England Found. v. Commonwealth*, 327 Mass. 587, 596 (1951) (same).

Perhaps more important, Sandia's contention is beside the point. As evidenced by paragraphs 14-20 of the Amended Complaint, *all* of the factual allegations concerning Sandia's claims for misrepresentation and breach of contract involve events that occurred *before* the

---

[2] In *Armstrong v. Rohm and Haas Co.*, No. Civ. A. 03-40246-FDS, 2004 WL 2785270, at *3-4 (D. Mass. Oct. 15, 2004), cited by Sandia in its Response at p. 4, the release applied only to claims the plaintiffs had "from the beginning of time until the present . . . ." It was because the release applied only to claims that arose on or before the date of the settlement agreement that the court found that it did not apply to future claims. In contrast, the release here is not so limited and applies to "any and all claims" concerning the Equipment irrespective of when they arose.

parties entered into the October 27, 2003 Settlement Agreement. Thus, even under Sandia's strained interpretation of the Settlement Agreement, those claims are barred.

      C.      <u>There Is No Evidence the Settlement Agreement Was Procured by Fraud.</u>

Because the express terms of the Settlement Agreement bar Sandia's claims, Sandia alternatively alleges the Settlement Agreement "was procured by fraud" and, therefore, "is ineffective." Response, p. 5. This argument is also baseless.

Aside from summarily alleging the Settlement Agreement was part of "an ongoing scheme to defraud [Sandia]," Response, p. 5, Sandia does not offer a single fact to support the claim that the Settlement Agreement was fraudulently obtained. Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud . . . the circumstances constituting fraud . . . be stated with particularity." Fed. R. Civ. P. 9(b). This imposes on Sandia the burden of identifying "the time, place and content of an alleged false representation . . . ." *McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228 (1st Cir. 1980). No such details concerning the allegedly fraudulent procurement of the Settlement Agreement are contained in the Amended Complaint.

Further, of the four representations the defendants made in the Settlement Agreement, none supports a claim for fraud. First, in the Settlement Agreement Indigo agreed to pay Sandia $13,000. Ex. 1. Indigo did so and Sandia does not contend otherwise.

Second, Indigo agreed to provide Sandia with "[t]welve months . . . of Shared Maintenance Service at no charge." *Id*. Again, Indigo did so and Sandia does not contend it did not receive the free maintenance.

Third, Indigo agreed to charge Sandia a reduced rate of $0.0225 per impression. *Id*. Indigo charged Sandia the reduced rate, and Sandia does not allege it was charged a higher rate.

The last representation the defendants made in the Settlement Agreement concerned a "Thick Substrates Kit." In this regard Sandia alleges the defendants "promised [but failed] . . . to provide a 'Thick Substrates Kit', which HP professed it was developing and which the parties understood would process a 30 ml plastic card." Amended Complaint, ¶ 19; *see also id*., ¶ 20. It is this allegation, apparently, on which Sandia bases its fraud claim in an attempt to rescind the Settlement Agreement.

Sandia's description of the provision concerning the Thick Substrates Kit grossly misrepresents the relevant paragraph of the Settlement Agreement. In its entirety, the paragraph of the Settlement Agreement concerning the Thick Substrates Kit states:

> HP *will consider Sandia as a candidate* for the beta testing of Seller's *proposed* upgrade option of a 'Thick Substrates Kit' for the hp indigo press s2000 (the 'Thick Substrates Option'). In this regard, however, *Sandia acknowledges that the Thick Substrates Option is still under development and the commercial release and/or availability of same* (upon successful completion of testing) *may be delayed for technical, commercial or other reasons, including HP's decision, in its sole discretion, not to proceed with the development and/or commercial [sale] of the Thick Substrates Option.*

Ex. 1 (emphasis added).

Contrary to Sandia's claim, HP did not "promise to provide a Thick Substrates Kit" or even to develop a Thick Substrates Kit. Instead, HP merely agreed to *consider* Sandia as a candidate to beta test the proposed Thick Substrates Kit in the event HP decided to complete the development, test and commercially release the kit. Indeed, the Settlement Agreement explicitly

stated the development of the kit might be delayed or canceled and, hence, never available to Sandia either for testing or for purchase.[3]

Under Massachusetts law, the representations the defendants made concerning the Thick Substrates Kit were promissory in nature and/or concerned a condition to exist in the future. As a matter of law, therefore, they cannot give rise to a claim for fraud. *Pepsi-Cola Metropolitan Bottling Co., v. Pleasure Island, Inc.*, 345 F.2d 617, 622 (1st Cir. 1965) ("false statements of opinion, of conditions to exist in the future, or of matters promissory in nature are not actionable"); *Sargent v. Tenaska, Inc.*, 914 F. Supp. 722, 730 (D. Mass. 1996), *aff'd*, 108 F.3d 5 (1st Cir. 1997) ("In general, promissory statements do not give rise to an action for fraud."). *See also Logan Equip. Corp. v. Simon Aerials, Inc.*, 736 F. Supp. 1188, 1199 (D. Mass. 1990) (fraud or misrepresentation cannot be established where the "alleged misrepresentation concerned a matter of opinion, estimate, or judgment, which was not susceptible of actual knowledge at the time of its utterance.").

In sum, the various arguments Sandia has offered to avoid its obligations under the Settlement Agreement are meritless. In exchange for $13,000, a year of free maintenance service, and a reduced per-impression rate, Sandia agreed to settle and release the defendants from all claims concerning the Equipment's alleged inability to print 30 ml plastic cards. It is undisputed the defendants fulfilled each of the commitments they undertook in the Settlement Agreement. Sandia should be required to do the same. To hold otherwise would be grossly unjust, as it would permit Sandia to attempt to collect on its claims concerning the Equipment

---

[3] While not material to defendants' Motion, should this case go forward the evidence will show that Sandia did beta test the Thick Substrate Kit. *See* Ex. 2, attached.

when it has already been paid for them once.  Thus, the Settlement Agreement should be enforced and Sandia's claims should be dismissed.[4]

## II.     SANDIA'S CLAIMS ARE BARRED BECAUSE THIS LAWSUIT WAS NOT FILED WITHIN ONE YEAR OF WHEN THE CLAIMS AROSE.

Sandia has attached the Purchase and Sale Agreement to the Amended Complaint as Exhibit B.  Therefore, the Court may consider that document as well in ruling on the defendants' Motion to Dismiss.  *See, e.g., Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993) (citations omitted).

In section 12 of the Purchase and Sale Agreement the parties agreed that any legal action concerning the Equipment was required to be brought within one year of when the claim arose, and that if the legal action was not commenced within that one-year period, it would be forever barred.  To the extent relevant here, section 12 states:

> 12.     **DISPUTES**.  The parties' agreement in respect of the Equipment shall be deemed to be entered into in Massachusetts and to be a Massachusetts contract and shall be governed and construed in accordance with the laws of the Commonwealth of Massachusetts.  *Seller and Buyer specifically agree that any legal action brought relating to the Equipment*, consumables and/or supplies purchased *or relating to the parties' agreement in respect thereof will be commenced in Massachusetts within one (1) year after the relevant claim arises, failing which such claim shall be barred notwithstanding any longer statutory period of limitations.*

Amended Complaint at Ex. B, ¶ 12 (emphasis added).

It is well established that, "in the absence of a controlling statute to the contrary, a provision in a contract may validly limit, between the parties, the time for bringing an action on such contract to a period less than that prescribed in the general statute of limitations, provided

---

[4] As explained at the outset, in contrast to the original Complaint, Sandia has not included in the Amended Complaint the declaratory judgment claim to void the Settlement Agreement that was based on Sandia's breach of the agreement's confidentiality provision.  Because that claim is no longer at issue in this case, the defendants will not address it any further despite Sandia arguing the point in its Response.

that the shorter period itself shall be a reasonable period." *Order of Travelers v. Wolfe*, 331 U.S. 586, 608 (1947). *See also Hays v. Mobil Oil Corp.*, 930 F.2d 96, 100 (1st Cir. 1991); *Alcorn v. Raytheon Co.*, 175 F. Supp. 117, 121 (D. Mass. 2001) ("contracting parties may agree upon a shorter limitations period as long as it is reasonable.") (quoting *I.V. Servs. of Am. v. Inn Dev. & Mgmt.*, 7 F. Supp. 2d 79, 86 (D. Mass. 1998), *aff'd*, 182 F.3d 51 (1st Cir. 1999)); Mass. Gen. Laws ch. 106, § 2-725 (West 2004) (contracting parties are permitted to reduce the period of limitation for commencing action on a contract to one year). In Massachusetts a one-year limitations period has repeatedly been held to be reasonable and enforceable. *See, e.g., Hays v. Mobil Oil Corp.*, 930 F.2d 96, 100 (1st Cir. 1991); *Reynolds Indus., Inc. v. Mobil Oil Corp.*, 618 F. Supp. 419, 423 (D. Mass. 1985); *Albrecht v. Clifford*, 436 Mass. 706, 718 (2002). *See also Int'l Bus. Mach. Corp. v. Catamore Enters., Inc.*, 548 F.2d 1065, 1073 (1st Cir. 1976) (comprehensive written agreements entered into between two sophisticated parties cannot be "easily bypassed or given restrictive interpretations.").

According to the Amended Complaint, the defendants allegedly assured Sandia in November, 2002 that the Equipment would be able to print 30 ml plastic cards. Amended Complaint, ¶ 8. Sandia further alleges that from the moment the Equipment was delivered and installed on March 15, 2003, the Equipment "was unable. . . to process printing on 30 ml plastic as promised." *Id.*, ¶ 14. According to Sandia, the defendants "responded with promises to correct the [Equipment] and retrofit the system with modifications to enable it to print . . . the 30 ml cards." *Id.*, ¶ 15. These representations allegedly were made in April and May, 2003. *Id.* Sandia asserts that despite those alleged promises, the modifications were never delivered. *Id.*

As a result, Sandia sent a demand letter to the defendants in August, 2004, which demand letter led to parties' entering into the Settlement Agreement on October 27, 2004. *Id*., ¶¶ 16, 19-20.

Under Massachusetts law, Sandia's claims for breach of contract arose at the time of the breach. *Flannery v. Flannery*, 429 Mass. 55, 58 (1999) ("The general rule in breach of contract cases is that a cause of action accrues when the contract is breached."); *Campanella & Cardi Construction Co. v. Commonwealth*, 351 Mass. 184, 185 (1966) ("A cause of action for breach of contract accrues at the time of the breach.") (citing *Boston Tow Boat Co. v. Medford Nat'l Bank*, 232 Mass. 38, 41 (1919)). Sandia's claims for fraud and negligent misrepresentation arose when Sandia learned or reasonably should have learned of the misrepresentation. *Friedman v. Jablonski*, 371 Mass. 482, 485 (1976); *McEneaney v. Chestnut Hill Realty Corp.*, 38 Mass. App. Ct. 573, 577 (1995); *Cargill v. Gilmore*, 1 Mass. L. Rptr. 167, No. 920485G, 1993 WL 818899, at *3 (Mass. Super. Ct. Aug. 18, 1993).

Sandia admits it became aware the defendants allegedly had misrepresented the printing capabilities of the press and breached the Purchase and Sale Agreement on March 15, 2003, when the Equipment was installed. Amended Complaint, ¶ 14. Yet Sandia did not file this lawsuit until August 24, 2004, 17 months later. Because the Purchase and Sale Agreement requires that such claims be brought within 12 months of when they arose, and because Sandia waited 17 months before filing this lawsuit, Massachusetts law requires Sandia's claims to be dismissed.[5] *Albrecht v. Clifford*, 436 Mass. at 718.

---

[5] While Sandia contends that some misrepresentations also were made in April and May, 2004, those claims too were not filed until more than a year after they arose. Thus, they are barred for the same reason. Further, as explained *supra*, at pp. 8-9, Sandia's claim regarding the alleged misrepresentation concerning the Thick Substrate Kit (referenced in the Settlement Agreement) was promissory in nature and not actionable as a matter of law.

III.   SANDIA'S BREACH OF CONTRACT CLAIMS ALSO ARE BARRED BY THE AGREEMENTS' WARRANTY PROVISIONS.

In its Response, Sandia offers three arguments in an attempt to escape the clear and unambiguous warranty clauses in the Purchase and Sale Agreement and the maintenance agreements.

The Purchase and Sale Agreement required Sandia to notify HP *in writing* about any alleged defects with Equipment within three months of the installation of the Equipment, *i.e.*, before June 15, 2003, in order for Sandia to avail itself of the remedies in the warranty clause. Ex. 1, p. 2, § 8(a). Sandia admits in the Amended Complaint that it did not provide such written notice until August 25, 2003. Amended Complaint, ¶ 16. As a result, the warranty expired and HP had no further obligation to Sandia regarding the Equipment. *See* discussion and cases cited in Memorandum in Support of Defendants' Motion to Dismiss at pp. 11-13.

Sandia contends it was entitled to a six-month warranty (running to September 15, 2003) instead of a three-month warranty because one of its employees completed the Shared Maintenance Training Course within six months of the March 15, 2003 installation of the Equipment. Response, p. 7. Sandia is mistaken. As evidenced by the notice Indigo sent Sandia on October 29, 2003, Sandia "failed to complete the required Shared Maintenance Training Course [it] signed up for on August 18, 2003." *See* Ex. 3 attached to Memorandum in Support of Defendants' Motion to Dismiss. As a result, Sandia was charged a higher monthly fee which Sandia never disputed. *Id*. Further, the alleged Certificate of Completion Sandia attached as Exhibit E to the Amended Complaint does not support Sandia's contention on this point. The Certificate indicates that a Mr. Maldonado completed a Shared Support Training Course on *September 1, 2000*. In view of the fact that the training requirement in the Purchase and Sale

-13-

Agreement was intended to insure that Sandia would be schooled in how to repair the new digital press it had purchased, the training Mr. Maldonado received more than two years earlier did not satisfy the contract requirement that Sandia complete the training course within six months of the Equipment being installed on *March 15, 2003*.

Next, while acknowledging that Massachusetts permits parties to contractually agree to limit their liability, *see* Mass. Gen. Laws Ann. ch. 106, § 2-719 (West 2004), Sandia contends the warranty provisions in the Purchase and Sale Agreement and the maintenance agreements should not be enforced because the repair-and-replace provisions failed of their essential purpose. Response, pp. 8-9. This assertion is untrue for two reasons. First, as a matter of law, the repair-and-replace provisions became inapplicable when the warranties expired in the Purchase and Sale Agreement (June 15, 2003) and the maintenance agreements (30 days after the services were performed). *See, e.g., Boston Helicopter Charter, Inc. v. Augusta Aviation Corp.*, 767 F. Supp. 363, 374 (D. Mass. 1991). *See also Wisconsin Power & Light Co. v. Westinghouse Elec. Corp.*, 830 F.2d 1405, 1412-13 (7th Cir. 1987). Because Sandia failed to assert its claims until after those warranties expired, the repair-and-replace provisions cannot be said to have failed of their essential purpose.

Second, the Amended Complaint makes clear that it was in response to Sandia's complaints about the Equipment that the parties entered into the October, 2003 Settlement Agreement. As a result, Sandia received $13,000, a year's free maintenance and a reduced per-impression charge. Inasmuch as this accommodation more than fulfilled the defendants warranty obligations (to the extent they did not lapse on June 15, 2003 under the Purchase and Sale Agreement, or 30 days after the maintenance services were performed), the clauses cannot be

said to have failed of their essential purpose. Thus, the limitation of liability provisions in the agreements are entitled to be enforced.

Finally, Sandia asserts that even if "the limitation of liability clauses are valid they may nonetheless be unenforceable if Sandia succeeds in proving fraudulent inducement." Response, p. 10. Sandia forgets, however, that it settled and released all claims – including all fraud claims – concerning the Purchase and Sale Agreement and the Equipment in the Settlement Agreement. Thus, the fraudulent procurement argument is no longer available to Sandia and cannot save the Amended Complaint.[6]

## CONCLUSION

Based on the foregoing reasons, and for the reasons set forth in the Memorandum in Support of Defendants' Motion to Dismiss, Sandia's claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

   /s/ Kevin P. Light   
Kevin P. Light (BBO #300110)
E. Page Wilkins (BBO #654535)
CHOATE HALL & STEWART
Exchange Place
53 State Street
Boston, MA  02109-2804
(617) 248-5000

Dated:  January 12, 2005

3786948

---

[6] The Settlement Agreement also precludes the breach of express warranty claim Sandia seeks to assert. *See* Response, p. 10.