# Exhibit 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FOLINO PRINTING COMPANY,<br>    Plaintiff<br><br>v.<br><br>INDIGO AMERICA, INC.,<br>IBM CREDIT CORPORATION, and<br>HEWLETT-PACKARD INDIGO DIVISION,<br>    Defendants<br><br><br>IBM CREDIT CORPORATION and<br>INDIGO AMERICA, INC.,<br>    Counter-Claimant<br><br>v.<br><br><br>FOLINO PRINTING COMPANY,<br>    Counter-Defendant<br><br><br>IBM CREDIT CORPORATION,<br>    Cross-Claimant<br><br>v.<br><br>INDIGO AMERICA, INC. and<br>HEWLETT-PACKARD INDIGO DIVISION,<br>    Cross-Defendants | CIVIL ACTION<br>NO. 03-10901-REK |

**Memorandum and Order**
September 14, 2005

## I. Pending Matters

Pending before the court are matters related to the following filings:

(1) Indigo America, Inc.'s Motion For Partial Summary Judgment (Docket No. 28, filed June 15, 2005);

(2) Memorandum in Support of Indigo America, Inc.'s Motion For Partial Summary Judgment (Docket No. 29, filed June 15, 2005);

(3) Indigo America Inc.'s Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 (Docket No. 30, filed June 15, 2005);

(3) Folino Printing Company's Opposition to Indigo America Inc.'s Motion For Partial Summary Judgment (Docket No. 32, filed July 15, 2005);

(4) Concise Statement of Disputed Material Facts of Folino Printing Company in Support of Opposition to Indigo America Inc.'s Motion For Partial Summary Judgment (Docket No. 32, Exh. 1, filed July 15, 2005);

(5) Folino Printing Company's Memorandum of Law in Support of Opposition to Indigo America Inc.'s Motion For Partial Summary Judgment (Docket No. 32, Exh. 2, filed July 15, 2005);

(6) Affidavit of Gary Folino in Support of Opposition to Indigo America Inc.'s Motion For Partial Summary Judgment (Docket No. 32, Exh. 3, filed July 15, 2005);

(7) Affidavit of Denise A. Chicoine, Esq. in Support of Opposition to Indigo America Inc.'s Motion For Partial Summary Judgment (Docket No. 32, Exh. 4, filed July 15, 2005);

(8) Indigo America, Inc.'s Motion For Leave to File a Reply Brief in Support of Its Motion For Summary Judgment (Docket No. 33, filed July 28, 2005); and

(9) Indigo America, Inc.'s Reply Brief in Support of Its Motion For Summary Judgment (Docket No. 33, Exh. 1, filed July 28, 2005).

## II. Background

On December 20, 2002, Folino Printing Company ("Folino") filed this suit in the Court of Common Pleas, Hamilton County, Ohio (Compl., Docket No. 1, filed May 12, 2005). The suit centers on Folino's purchase of a printing press from Indigo America, Inc. ("Indigo"), which is a wholly owned subsidiary of Hewlett-Packard Indigo Division, with the help of a lease agreement Folino entered into with IBM Credit LLC ("IBM"), formerly known as IBM Credit Corporation. The suit also focuses on the purchase of a related IBM server.

Indigo appears to have filed a notice of removal in the United States District Court for the Southern District of Ohio, Western Division, on January 24, 2003 (Notice of Filing Notice of Removal, Docket No. 1). On January 31, 2003, Indigo filed an initial answer to Folino's complaint (Indigo's Ans., Docket No. 1). On February 10, 2003, Indigo filed an amended answer and a counterclaim (Indigo's Amend. Ans., Docket No. 1). Indigo's counterclaim alleges that Folino committed a breach of a Maintenance Service Agreement ("Maintenance Agreement") with Indigo that was entered into in conjunction with the printing press contract.

On February 4, 2003, IBM filed a document styled as an "answer, counterclaim, and cross-claim" (IBM's Ans., Docket No. 1). IBM raised a counterclaim against Folino based on Folino's breach and default on the lease agreement it entered into with IBM in order to

3

purchase the printing press. IBM also raises a cross-claim against Indigo and Hewlett-Packard Indigo Division for indemnification if IBM is found liable to Folino.

On February 26, 2003, Indigo filed an answer to IBM's cross-claim (Indigo's Ans. to IBM's Cross-Claim, Docket No. 1). On February 27, 2003, Folino filed its "reply" to IBM's counterclaim (Folino's Reply, Docket No. 1).

On February 10, 2004, Indigo filed a motion to transfer the case to the District of Massachusetts pursuant to 28 U.S.C. § 1404(a) based, in part, on a forum selection clause in the printing press contract (Mot. to Transfer, Docket No. 1). On March 6, 2003, IBM filed a memorandum indicating that, while it did not find a transfer to the District of Massachusetts convenient, IBM was willing to litigate the case wherever it was ultimately located (Mem. of IBM, Docket No. 1). On March 31, 2003, Folino filed a memorandum in opposition to Indigo's motion to transfer the case (Folino's Mem. in Opp., Docket No. 1). On April 15, 2003, Indigo filed a reply to Folino's opposition (Indigo's Reply, Docket No. 1). On the same day, Indigo filed an addendum to its reply (Indigo's Add. to Reply, Docket No. 1). On May 6, 2003, Indigo filed a notice of supplemental authority in relation to its motion to transfer (Indigo's Not. of Suppl Auth., Docket No. 1). On May 8, 2003, Senior District Judge Weber entered an order granting Indigo's motion and transferring the case to the District of Massachusetts (Transf. Order, Docket No. 1). A Notice of Transmittal was filed in this District on May 12, 2003 (Docket No. 1).

On November 18, 2003, Folino filed an amended complaint (Docket No. 12). In the amended complaint Folino contends that Indigo committed breaches of contracts by failing to cure a defective printing press and charging Folino for payments due on the Maintenance Agreement. Folino also contends that both Indigo and IBM misrepresented the quality of the

4

products provided to Folino and the amount of financing they were providing Folino. In addition, Folino alleges that IBM committed a breach of contract by not delivering an IBM server to Folino in a timely manner and charging Folino for payments before the server was delivered. Folino contends that both IBM and Indigo committed breaches of express warranties to keep the printing press and associated IBM server in good working order. Next, Folino contends that Indigo made negligent misrepresentations concerning the functionality of the printing press and that IBM made negligent misrepresentations concerning the value of the IBM server. In the alternative, Folino contends that IBM and Folino's statements concerning the functionality of the printing press and the value of the IBM server amount to fraud. Finally, Folino seeks rescission of the contracts.

On March 22, 2004, Indigo filed an answer to Folino's amended complaint (Docket No. 15). The answer indicated that Indigo continues to maintain its counterclaim against Folino.

On June 15, 2005, Indigo filed a motion for partial summary judgment (Docket No. 28). The motion seeks summary judgment on the claims brought against it by Folino based on a one-year limitation clause contained in the contract between Indigo and Folino. On July 15, 2005, Folino filed an opposition to this motion (Docket No. 32). On July 28, 2005, Indigo sought leave to file a reply brief (Docket No. 33). Folino has not opposed this motion, and the requested leave was allowed at the hearing held on August 31, 2005.

### III. Analysis

**A. Motion For Leave to File**

5

As a preliminary matter, I have granted Indigo's unopposed motion to file a reply brief (Docket No. 33).

**B. Motion For Partial Summary Judgment**

**1. Introduction**

Turning to the merits, Indigo seeks summary judgment on the claims against it based upon a one-year limitation clause contained in the printing press contract. Indigo contends that all of the claims against it accrued sometime after the press was delivered in August 2001 but before the suit was filed in December 2002. Folino opposes the motion claiming that (1) since the contract was induced by fraud, the one-year limitation period provided by the contract is voidable; (2) Indigo is estopped from raising the statute of limitation as a defense; and (3) its suit is timely.

**2. Legal Standard**

Summary judgment should be granted only where the court, viewing the evidence in the light most favorable to the nonmoving party, determines that no genuine dispute of material fact exists and that "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. The movant has the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record showing the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant bears the burden of establishing a fact at trial, then to meet the initial burden, the movant must demonstrate with conclusive proof that no genuine issue of fact exists such that no reasonable jury could find otherwise. Torres Vargas v. Santiago Cummings, 149 F.3d 29, 35 (1st Cir. 1998).

Once the movant has met its burden, then the nonmoving party must demonstrate that the essential elements of "its claim or defense [are] at least trialworthy." Price v. General

6

Motors Corp., 931 F.2d 162, 164 (1st Cir. 1991). A factual question is material if a reasonable jury could return a verdict for the nonmoving party based at least in part on its determination of the factual question. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether summary judgment should be granted, a court reads the record, and all reasonable inferences to be drawn from the record, in the light most favorable to the nonmoving party. Data Gen. Corp. v. Grumman Sys. Support Corp., 36 F.3d 1147, 1159 (1st Cir. 1994). The facts in genuine dispute must be significantly probative in order for summary judgment to be denied; "conclusory allegations, improbable inferences, and unsupported speculation will not suffice." Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997).

### 3. Duration and Scope of the One-Year Contractual Limitation Period

No dispute exists about whether the printing press contract contains a provision purportedly narrowing the period of the statute of limitations to one year. It did. This is a valid contractual limitation authorized by statute. Section 2-725 of Chapter 106 of Massachusetts General Laws states in relevant part:

> (1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

Id.

Folino has brought suit based upon claims of breach of contract, breach of warranty, negligent misrepresentation, and fraud. Folino also seeks rescission of the printing press contract. Thus, I must determine which of Folino's claims are governed by the limitation period.

7

All of Folino's claims against Indigo fall under the statute of limitation established by § 2-725, and, therefore, are covered by the one-year contractual limitation period. By the words of § 2-725, Folino's breach of contract claim is governed by the one-year period in the printing press contract. Folino's claim for breach of warranty is also covered by the one-year period since it is a contract-based warranty claim for economic loss. See Bay State-Spray & Provincetown S.S., Inc. v. Caterpillar Tractor Co., 533 N.E.2d 1350, 1353 (Mass. 1989). Finally, Folino's claims for negligent misrepresentation and fraud are also governed by the one-year limitation period because they essentially restate Folino's breach of contract and breach of warranty claims against Indigo. See Springfield Library and Museum Ass'n, Inc. v. Knoedler Archivum, Inc., 341 F. Supp. 2d 32, 36–37 (D. Mass. 2004) (noting that when a claim sounds in tort but amounts to a complaint that the plaintiff "did not receive what it contractually bargained for," the claim should be treated as a "contractual breach of warranty"); McDonough v. Marr Scaffolding Co., 591 N.E.2d 1079, 1083 (Mass. 1992) ("To allow the plaintiffs to recast their negligence claim in the form of a warranty claim in order to circumvent the operation of the repose statute would nullify the purpose of the repose provision altogether.").

### 4. Accrual of the Claims

Having determined that the one-year limitation period is applicable to all of Folino's claims, I turn my attention to when the claims accrued. Since Indigo bears the burden of establishing the limitation defense, Indigo must initially establish when the claims accrued. This is a contract for the sale of a good, so the accrual issue is governed by statute. Therefore, I begin my analysis with the text of the relevant statute. Section 2-725 of Chapter 106 of Massachusetts General Laws states in relevant part:

8

> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

Id. Pursuant to the above statute, the breach of contract claim occurred at the time of the breach, and the breach of warranty claim occurred at the time that delivery was tendered.

Addressing the breach of contract claim, Indigo points to evidence establishing that the printing press was delivered in August 2001 and that Folino's president signed a certificate of completion of installation in September 2001. Folino admits that the printing press became operable in September 2001 (Amend. Compl, Docket No. 12, ¶ 18). The evidence in the record is sufficient to establish that the delivery of the printing press and its acceptance occurred before December 2001. See Wolverine Ins. Co. v. Tower Iron Works, Inc., 370 F.2d 700, 702 (1st Cir. 1966). Since the record shows that there were constant problems with the machine after it was accepted, breach also occurred before December 2001.

Turning my attention to the breach of warranty claim, there appear to be two aspects to this claim. First, to the extent that Folino is claiming that Indigo did not provide a printing press that complied with the warrants made by Indigo, the normal rule provided by statute is that the claim accrues at the time the press is tendered. See Mass. Gen. Laws c. 106, § 2-725. During the hearing, however, Folino claimed that the breach of warranty could not accrue until the warranty period provided by the contract expired. I begin my analysis with the contract. The first warranty provision states:

> Indigo agrees to provide Buyer with a three (3) month warranty

9

>    (the "Warranty Period") on the Equipment. In addition, Indigo will provide Buyer with an additional three (3) months of warranty, thereby extending the Warranty Period to a total of six (6) months if Buyer (i) contemporaneously with the execution of this Purchase and Sale Agreement;[sic] executes a one year agreement for Indigo Shared Maintenance on the Equipment and (ii) completes the required Shared Maintenance Training Course within six months of Indigo's completion of installation of the Equipment. In either event, the Warranty Period shall be deemed to have commenced upon Indigo's certification of completion of installation of the Equipment.

Additional relevant warranty provisions are in a section titled "Warranties; Limitation of Liability." Those provisions state:

>    (a) Indigo warrants for the Warranty Period described in this Agreement, each item of Equipment against defects arising from Indigo's faulty materials and workmanship, provided that (1) Indigo has received prior to the end of the Warranty Period specified herein, written notice regarding a defective part of an item of equipment, (2) Buyer has afforded Indigo prompt and reasonable opportunity to inspect any part as to which any claim is being made, and (3) the relevant part has been stored, shipped, handled, installed, operated, and maintained in accordance with the then current recommendations set forth in Indigo's manual and/or other written instructions and has not been modified without Indigo's prior written consent.
>
>    (b) Should Indigo determine, in its reasonable discretion, after its timely receipt of notice in the manner specified above, that any part of an item of Equipment is defective due to Indigo's faulty materials or workmanship, Indigo *shall, at its expense, repair or replace (at Indigo's sole option) such part and return the repaired/replacement part to Buyer.* The provisions of this Warranty shall apply to the repaired/replacement part for the unexpired portion, if any of the Warranty Period.
>
>    . . .
>
>    (d) THE FOREGOING WARRANTY, SET FORTH IN THIS SECTION IS INDIGO'S SOLE AND EXCLUSIVE WARRANTY REGARDING THE EQUIPMENT, AND THERE

10

>ARE NO OTHER WARRANTIES 9INCLUDING, WITHOUT LIMITATION, WARRANTIES FOR CONSUMABLES AND OTHER SUPPLIES), LIABILITIES OR GUARANTEES, EXPRESS OR IMPLIED (INCLUDING, WITHOUT LIMITATION, ANY WARRANTIES OF MERCHANTABILITY OR FITNESS FOR ANY FOR A PARTICULAR PURPOSE. BUYER EXCEPT AS AFORESAID, SHALL HAVE NO CLAIM AGAINST INDIGO OF ANY NATURE WHATSOEVER, WHETHER ARISING IN CONTRACT, TORT, NEGLIGENCE OF ANY DEGREE, STRICT LIABILITY OR OTHERWISE, WITH RESPECT TO THE EQUIPMENT OR ANY PART THEREOF DELIVERED HEREUNDER AND/OR WITH RESPECT TO ANY NON-CONFORMANCE OR DEFECT IN ANY SUCH EQUIPMENT AND/OR PART THEREOF DELIVERED HEREUNDER, INCLUDING BUT NOT LIMITED TO ANY LIABILITY OF INDIGO FOR ANY CONSEQUENTIAL AND/OR INCIDENTAL DAMAGES AND/OR LOSSES (INCLUDING, WITHOUT LIMITATION, LOSS OF USE, REVENUE, AND/OR PROFITS), AND IN ANY EVENT, THE EXTENT OF INDIGO'S MAXIMUM LIABILITY TO BUYER HEREUNDER SHALL NOT, UNDER ANY CIRCUMSTANCES, EXCEED THE COST OF REPAIRING OR REPLACING (AT INDIGO'S SOLE OPTION) ANY PART/S FOUND TO BE DEFECTIVE WITHIN THE WARRANTY PERIOD AS AFORESAID.
>
> (e) Without derogating from the above, if Indigo, for any reason whatsoever, fails to perform, meet and/or fulfill, in respect of any item/s of Equipment, its obligations hereunder, and is unable to remedy such failure, then Indigo's maximum aggregate liability (inclusive of any refund) for any losses or other damages incurred by Buyer and/or its customers (including, without limitation, consequential and/or incidental damages as well as loss of use and/or profits) shall not exceed the total amount paid by Buyer for such item/s of Equipment.

(emphasis added). The contractual provisions appear to warrant the performance of the printing press throughout the six-month warranty period and promise to remedy any breach by attempting to repair the press.

11

The warrant of performance during the six-month period could be construed as "a warranty explicitly extend[ing] to future performance of the" printing press. If it is, Folino's "cause of action accrue[d] when the breach [wa]s or should have been discovered." Id. This does not help Folino, however, because the record makes it abundantly clear that the goods did not work as allegedly warranted from the time that the printing press was tendered and that Folino was aware of this fact. Thus any claim for a breach of warranty based upon the defective goods themselves accrued well before December 2001.

As for the second aspect of this claim, Folino appears to contend that the failure of Indigo to fix the machine amounted to a breach of a warranty to repair. "However, promises to repair or to replace are generally viewed as specifications of a remedy rather than as an independent or separate warranty." New England Power Co. v. Riley Stoker Corp., 477 N.E.2d 1054, 1058 (Mass. App. 1985); see also Patapanian v. MGM Contracting Co., Inc., 3 Mass. L. Rept. 5, 1994 WL 879549, *3 (Mass. Super. Nov. 3, 1994). The text of the repair and liability clauses in this case taken together indicate that the obligation to repair is a remedy and not an independent or separate warranty. I find the analysis of New England Power persuasive in this respect. First, the language of the clauses discussing the obligation to repair, emphasized above, is substantially similar to the language of the repair clauses in New England Power. The clauses in that case provided:

> Notwithstanding the other continuing obligations of the Contractor under this Agreement, the Contractor *shall repair and make good, without cost to the Purchaser*, any damages, defects or faults resulting from imperfect or defective work done or unsound or improper materials furnished by the Contractor which develop during the period of one year (or during a longer period if so stipulated in the specifications) from date of the certification by the

12

Engineer that the work has been completed.

477 N.E.2d at 1058 (emphasis added). Second, New England Power involved a situation, similar to this case, where a party's "argument seem[ed] structured to avoid the consequences of its failure to timely commence suit." 477 N.E.2d at 1058. In light of my finding that the promise to repair in the printing press contract specifies a remedy of first resort, the failure of Indigo to repair does not prevent Folino's claim for breach of warranty from accruing before December 2001. See id. at 1058–59.

Even if I were to find that Folino could sue based upon a breach of warranty due to Indigo's failure to repair, Folino's problems with the machine in September, October, and November 2001 coupled with the failure of Indigo to adequately fix the machine during that period are likely sufficient to show that the cause of action accrued before December 2001.

Since Folino's fraud and negligent misrepresentation claims are treated as breaches of warranties, the accrual analysis is the same for these claims. Therefore, these claims also accrued before December 2001.

Finally, Folino's contention that the machine was never made to operate properly so that a breach of contract or tender of delivery did not occur until after December 2001 is without merit. See New England Power Co. v. Riley Stoker Corp., 477 N.E.2d 1054, 1057 (Mass. App. 1985).

### 5. Fraud in the Inducement

In an attempt to avoid the effect of the one-year limitation period, Folino contends that the limitation period is voidable because it is contained in a contract that Indigo fraudulently induced Folino to sign. Folino recognizes that, if it wins on this argument, the only claims that

13

will remain are its fraud and negligent misrepresentation claims. (Folino's Mem. of Law, Docket No. 32, at 3). Folino claims that Indigo fraudulently induced it to execute the printing press contract in four ways: (1) Indigo falsely assured Folino that the press would have no problem printing a single color; (2) Indigo misrepresented that the press would work well with an IBM computer and the Adobe Indesign program; (3) Indigo provided Folino with a spreadsheet that "wildly" misstated how the specifications of the press would ensure Folino's profitability; and (4) Indigo provided explicit and repeated assurances that the press would do everything needed for Folino's particular application, and that Indigo would do whatever it took to get it to work.

Indigo contends that even if Folino could show fraud in the inducement, unless Folino can show that the contractual limitation period was itself induced by fraud, the limitation period cannot be avoided. In support of its contention Indigo cites to cases holding that arbitration clauses, forum selection clauses, choice of law clauses, and jury waiver clauses are not voidable where a party claims that he or she was induced to sign the entire agreement by fraud. Indigo argues that contractual limitation clauses are analogous to these other types of clauses because they pertain "to how and when any dispute arising out of the transaction will be resolved" (Indigo's Reply Brief, Docket No. 34, Exh. 1 at 4). I am skeptical of Indigo's argument because arbitration clauses, forum selection clauses, choice of law clauses, and jury waiver clauses all serve to regulate the *manner* in which disputes related to contracts are handled; a contractual limitation period serves to limit the *ability* of parties to dispute an issue. Because I find that Folino's fraud in the inducement argument is without merit, however, I do not need to rule on this issue at this time.

14

Folino cannot avoid the contractual limitation period based upon its claim of fraud in the inducement. Folino's grounds for fraud in the inducement simply restate its breach of contract/breach of warranty claims. Folino should not be able to avoid a contractual limitation period by merely re-framing its breach of contract or a breach of warranty claims as grounds for fraud in the inducement. See generally Springfield Library and Museum Ass'n, Inc., 341 F. Supp. 2d at 36–37; McDonough v. Marr Scaffolding Co., 591 N.E.2d at 1083.

### 6. Equitable Estoppel

Folino makes one final attempt to avoid the effect of the one-year limitation period by claiming that Indigo's "efforts" to convince Folino that it would fix the printing press's defects equitably estop Indigo from raising the contractual limitation period as a defense. Folino has the burden of establishing that Indigo is estopped from raising the limitation period as a defense. See Pagliarini v. Iannaco, 800 N.E.2d 696, 698 (Mass. 2003).

> It has long been the rule that to meet this burden, a plaintiff must show that the statements of the defendant lulled the plaintiff into the false belief that it was not necessary to commence action within the statutory period of limitations, that the plaintiff was induced by these statements to refrain from bringing suit, as otherwise the plaintiff would have done, and was thereby harmed, and that the defendant knew or had reasonable cause to know that such consequence might follow. A plaintiff must also show that reliance on the defendant's was reasonable. Implicit in these requirements is that the defendant's inducements caused the plaintiffs to delay taking appropriate, timely legal action.

Id. (citations, quotation marks, and ellipses omitted). Even if a plaintiff can demonstrate these elements, "equitable estoppel will not apply if a reasonable time remains within the limitations period for filing the action once the circumstances inducing the delay have ceased[.]" Id. (alterations omitted). Whether reasonable time remains within the limitation period "may be" a

15

question "for the jury to decide where the facts are disputed or the matter rests largely on inference[.]" Id. Where the "evidence presented . . . warrants but one conclusion[,]" however, summary judgment is appropriate. Id.

Because Folino has not proffered sufficient evidence from which a reasonable jury could conclude that it raised its suit in a timely manner after realizing that Indigo would not be able to fix the defects in the printing press, Folino cannot establish that Indigo is estopped from raising the contractual limitation period as a defense. I will assume without deciding that all of Folino's factual assertions in its opposition are true. Folino's opposition to Indigo's motion for summary judgment alleges that Indigo's conduct that allegedly lulled it into a false sense of security continued "up until April 2002" (Folino's Opp. to Indigo's Mot. for Partial Summ. J., Docket No. 32, at 5). Folino's opposition also claims that "[f]rom September 2001 through May 2002, Indigo's Commercial Account Manager John Specht . . . repeatedly convinced Folino that 'we [Indigo] can fix it, we'll send another person out, we'll get to work" (Id.). The record also indicates that on May 8, 2002, Folino's attorney sent Indigo a letter seeking rescission of the printing press contract and requesting that Folino be placed back into the position it was in before entering the contract (Indigo's L.R. 56.1 Statement, Docket No. 32, Exh. 1, Exh. 7). The letter gave Indigo ten days to respond. Because I must read the record in the light most favorable to Folino, I will assume for the purposes of this motion that Folino was lulled into a false sense of security until May 18, 2002. See Pagliarini, 800 N.E.2d at 698 (noting that the circumstances preventing the plaintiff from proceeding on its claim ceased "once the plaintiffs hired an attorney and directed that suit be filed").

The earliest date that the contractual limitation period could have accrued was in early August 2001. Therefore, Folino had from May 18, 2002, until early August 2002 to bring its suit within the limitation period. Folino did not file suit until December 2002. If the only question were whether Folino had reasonable time to bring its suit before the limitation period expired, I might be inclined to find that a triable issue of material fact exists over whether Indigo is estopped from raising the limitation period as a defense. See id. (finding four months a reasonable amount of time). I do not believe that this equitable defense should be construed in such a way so as to ignore when a plaintiff's suit was actually filed. If it were, it would undermine the urgency in prosecuting claims that limitation periods are designed to foster. Folino did not file suit until over seven months after its attorney indicated that Folino would take action. This delay is unreasonable as a matter of law and precludes Folino from prevailing on a claim that Indigo is equitably estopped from raising the contractual limitation period as a defense. See id.

**ORDER**

For the foregoing reasons, it is ORDERED:

(1) Indigo America, Inc's Motion For Partial Summary Judgment (Docket No. 28) is ALLOWED;

(2) Indigo America, Inc.'s Motion For Leave to File a Reply Brief in Support of Its Motion For Summary Judgment (Docket No. 33) is ALLOWED; and

17

(3) A scheduling conference is set for **2:30 p.m., November 30, 2005**.


　　　　　　　　　　　　　　　　　____/s/Robert E. Keeton_____
　　　　　　　　　　　　　　　　　Robert E. Keeton
　　　　　　　　　　　　　　　　　United States Senior District Judge

18